John C. Kang, Bar No. 181177
*John.Kang@wbd-us.com*
Courtney Wenrick, Bar No. 286380
*Courtney.Wenrick@wbd-us.com*
**WOMBLE BOND DICKINSON (US) LLP**
400 Spectrum Center Drive, Suite 1700
Irvine, California 92618
Telephone:  714.557.3800
Facsimile:   714.557.3347

Attorneys for *Plaintiffs*
BENJAMIN MELENDEZ, RANJEET
PANNU, and BIKRAMJIT
SINGH PANNU

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# SOUTHERN DIVISION

|  |  |
|---|---|
| BENJAMIN MELENDEZ, an individual; RANJEET PANNU, an individual; and BIKRAMJIT SINGH PANNU, an individual,<br><br>                    Plaintiffs,<br><br>          v.<br><br>CULTURE CANNABIS CLUB, a California corporation; SKYBOX HOLDINGS 81, a California corporation; MAMMOTH LEGEND CONSULTING, INC., a California corporation; BLOOMSTONE, a California corporation; PROFICIENT PROFITS, a Texas limited liability company; TOMMY LE, an individual; JULIE LE, an individual; CHRISTINA D'ANGELO, an individual; DEVON JULIAN, an individual; CHRIS FRANCY, an individual, ANH TRAN aka ANH RAFOL, an individual; ; and DOES 1 through 100, inclusive, | Case No.: 2:24-cv-2926<br><br>**COMPLAINT FOR:**<br><br>**(1) VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO) (18 U.S.C. § 1962);**<br>**(2) BREACH OF ORAL CONTRACT;**<br>**(3) BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING;**<br>**(4) BREACH OF FIDUCIARY DUTY;**<br>**(5) FRAUD - INTENTIONAL MISREPRESENTATION;**<br>**(6) FRAUD - FALSE PROMISE;**<br>**(7) FRAUD - CONCEALMENT;**<br>**(8) NEGLIGENT MISREPRESENTATION;**<br>**(9) CONVERSION;**<br>**(10) ACCOUNTING;** |

1

**COMPLAINT**

Defendants.

**(11) UNFAIR BUSINESS PRACTICES (CAL. BUS. & PROF. CODE § 17200); and**

**(12) CONSTRUCTIVE TRUST**

**JURY TRIAL DEMANDED**

Plaintiffs BENJAMIN MELENDEZ, an individual ("Melendez"); RANJEET PANNU, an individual ("Ranjeet"); and BIKRAMJIT SINGH PANNU, an individual ("Bic") (collectively, "Plaintiffs"), through their counsel, hereby complain against defendants TOMMY LE, an individual ("Tommy"); JULIE LE, an individual ("Julie"); CHRISTINA D'ANGELO, an individual ("Christina"); DEVON JULIAN, an individual ("Devon"); CHRIS FRANCY, an individual ("Chris"); ANH TRAN aka ANH RAFOL, an individual ("Anh"); CULTURE CANNABIS CLUB, a California corporation ("Culture Cannabis"); SKYBOX HOLDINGS 81, a California corporation ("Skybox"); MAMMOTH LEGEND CONSULTING, INC., a California corporation ("Mammoth Consulting"); BLOOMSTONE, a California corporation ("Bloomstone"); PROFICIENT PROFITS, a Texas limited liability company; and DOES 1-100, inclusive (collectively "Defendants"), as follows:

**I.    PARTIES**

1.    Melendez is, and at all times mentioned herein was, an individual residing in the County of Orange, State of California.

2.    Ranjeet is, and at all times mentioned herein was, an individual residing in the County of San Bernardino, State of California.

3.    Bic is, and at all times mentioned herein was, an individual residing in the County of San Bernardino, State of California.

4.    Tommy is, and at all times mentioned herein was, an individual residing in the County of Orange, State of California.

**COMPLAINT**

5. Julie is, and at all times mentioned herein was, an individual residing in the County of Orange, State of California.

6. Christina is, and at all times mentioned herein was, an individual residing in the County of Los Angeles, State of California.

7. Devon is, and at all times mentioned herein was, an individual residing in the County of Orange, State of California.

8. Chris is, and at all times mentioned herein was, an individual residing in the State of Nevada.

9. Anh is, and at all times mentioned herein was, an individual residing in the State of Texas.

10. Skybox is, and at all times mentioned herein was, a corporation organized and existing under the laws of the State of California, with its principal place of business in Irvine, California. Defendant Tommy is the Chief Executive Officer and Secretary of Skybox.

11. Mammoth Consulting was formerly known as MAMMOTH LEGEND CONSULTING, LLC, a California limited liability company, organized and existing under the laws of the State of California, and converted to a corporation on October 14, 2021, with its principal place of business in Irvine, California. Defendant Tommy is the Chief Executive Officer, Chief Financial Officer, Secretary, and Director of Mammoth Inc.

12. Bloomstone is, and at all times mentioned herein was, a corporation organized and existing under the laws of the State of California, with its principal place of business in Irvine, California. Defendant Christina is the Chief Executive Officer, Secretary, and Chief Financial Officer of Bloomstone.

13. Culture Cannabis is, and at all times mentioned herein was, a corporation organized and existing under the laws of the State of California, with its principal place of business in Irvine, California. Defendant Julie is the Chief Executive Officer, Secretary, and Chief Financial Officer of Culture Cannabis.

**COMPLAINT**

14.     Proficient Profits is, and at all times mentioned herein was, a limited liability company organized and existing under the laws of the State of Texas, with its principal place of business in Houston, Texas.

15.     Plaintiffs are ignorant of the true names and capacities of Defendants sued as DOES 1 through 100, inclusive, and therefore sue those Defendants by fictitious names. Plaintiffs will amend this Complaint to allege their true names and capacities when ascertained. Plaintiffs are informed and believe and thereon allege that each of these fictitiously named Defendants are legally responsible in some manner for the actions herein alleged, and that Plaintiff's damages were proximately caused by their conduct.

16.     There exists, and at all times herein mentioned there existed, a unity of interest and ownership between and among Defendants and DOES 1 through 100, inclusive, such that any individuality and separateness between these Defendants has ceased, and each Defendant is the alter ego of the other.

17.     Adherence to the fiction of the separate existence of Defendants Tommy, Julie, Christina, Devon, and Ahn (jointly and severally, "Individual Defendants"), and Defendants Skybox, Mammoth Consulting, Bloomstone, and Proficient Profits (jointly and severally, "Entity Defendants"), and DOES 1 through 100 would permit an abuse of the corporate privilege and would promote injustice in that the Individual Defendants and DOES 1 through 100 have used the Entity Defendants to work a fraud upon Plaintiffs and have otherwise used the assets of the Entity Defendants for their own personal use and/or commingled assets, to the detriment of Plaintiffs.

18.     Plaintiffs are informed and believe, and on that basis allege, that at all times mentioned herein, each of the Defendants was the agent of each other Defendant. Further, in doing the things hereinafter alleged, each was acting within the course and scope of such agency. At the same time, Defendants, including, but not limited to, DOES 1 through 100, and each of them, were motivated in part by

4

**COMPLAINT**

self-interest, evil motive, ill-will for Plaintiffs and have aided and abetted each other to commit the wrongful conduct specified herein and should be held liable in full for the consequences caused thereby.

**II.   JURISDICTION**

19.   This Court has subject matter jurisdiction over the First Claim for Relief herein pursuant to 28 U.S.C § 1331 in that it arises under United States Statute 18 U.S.C. § 1962 ("RICO").

20.   This Court has supplemental jurisdiction over the remaining Claims for Relief pursuant to 28 U.S.C. § 1367, in that they arise from the same nucleus of operative facts as the Claims for Relief over which this Court has original jurisdiction and as such are so related to those Claims that they form part of the same case or controversy under Article III of the United States Constitution.

21.   This Court has personal jurisdiction over each of the Defendants pursuant to 18 U.S.C. § 1965(b) and also because the Entity Defendants' principal place of business is located in the State of California and the Individual Defendants reside in the State of California.

**III.   VENUE**

22.   Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1), 28 U.S.C. § 1391(b)(2), and 18 U.S.C. § 1965(a) because Defendants reside in this District, Defendants transacted their affairs in this District, and a substantial part of the events giving rise to Plaintiffs' claims occurred in this District, and because, in accordance with Section 18 U.S.C. § 1965(b), the ends of justice require that all Defendants be brought before this Court.

23.   Venue is also proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendants conduct business, and the Entity Defendants' headquarters are located, in this District.

**IV.   NATURE OF THE CASE**

24.   This case is about an on-going fraudulent cannabis investment racket

**COMPLAINT**

operated in California by Defendants. The victims here are Melendez, Ranjeet, and Bic, investors who believed and trusted the Defendants. Because of their personal relationship and association in the cannabis industry, Defendants were able to obtain and exploit Plaintiffs' trust and confidence and perpetrated a scheme to defraud Plaintiffs by soliciting millions of dollars under false pretenses, failing to invest Plaintiffs' funds as promised, and misappropriating and converting Plaintiffs' funds to Defendants' own benefit and the benefit of others without the knowledge or authorization of Plaintiffs. Defendants accomplished this scam by deliberate, calculated, and malicious illegal acts, including fraud and wire fraud.

25.    Defendants' illegal conduct alleged herein is on-going and poses a continuing threat to the welfare of the general public unless ceased by judicial action.

26.    Plaintiffs seek to recover compensable damages, and the trebling of such damages pursuant to 18 U.S.C. § 1964(c).

## V.    THE CANNABIS INVESTMENT ENTERPRISE

27.    Ostensibly, the Individual Defendants operate a cannabis investment enterprise by which they apply for cannabis licenses throughout the United States, sell equity to investors but at different valuations (depending on the investor and the amounts sought) to develop, open, and manage cannabis stores in various locations throughout California, including in the counties of Los Angeles, Orange, and Riverside. To facilitate this enterprise, the Individual Defendants have formed, own and operate various entities to manage, purportedly hold investment funds, and to develop, build, and operate the cannabis stores. Each enterprise transacts its business through various instrumentalities of interstate commerce—telephones, cellular phones, electronic funds transfers, cash investments, facsimile machines, the internet, and the United States Postal Service.

28.    In California, cannabis dispensaries are required to be licensed by the state through the Department of Cannabis Control. There are different types of

licenses based on the type of operation, including licenses for retail and cultivation. A cannabis operation must also obtain a license through the city and/or county in which it operates. The requirements for these licenses vary by location. On information and belief, Plaintiffs allege that Defendants Devon, Julie and Chris obtained and maintained the licenses through Culture Cannabis.

## VI.    MATERIALLY FALSE AND MISLEADING STATEMENTS INDUCE PLAINTIFFS TO WIRE FUNDS TO DEFENDANTS

29.    Melendez has known Tommy since approximately 2016. They met in Santa Ana, California, and eventually became friends.

30.    In or about September 2021, Melendez met with Tommy to discuss an opportunity to invest in various cannabis stores. Tommy, personally and on behalf of the Entity Defendants, asked Melendez to invest $100,000.00 plus his percentage fee of the start-up costs after a conditional use permit ("CUP") is issued for locations in Fresno Maple, Fresno Bullard, Porterville, Wildomar, Costa Mesa, Barstow, San Francisco, and Corona in exchange for, initially a 10% interest in the Fresno Maple, Fresno Bullard, Porterville, Wildomar, Costa Mesa, Barstow, San Francisco, and Corona stores. Later, Melendez's interests in Porterville, Wildomar, Costa Mesa, Barstow, San Francisco, and Corona were reduced to 8.5% to accommodate other investors.

31.    Based on Defendants' representations, Melendez agreed to make a cash investment of $100,000.00 and contribute his percentage of the start-up costs to construct and open cannabis stores after the applicable CUP is issued for various locations throughout California including, Fresno Maple, Fresno Bullard, Porterville, Wildomar, Costa Mesa, Barstow, San Francisco, and Corona. To that end, Melendez sent the funds to Defendants by check, cash, wire transfers, and covering the construction costs:

- October 5, 2021, $100,000.00 cash to Tommy Le

- October 2021, $192,082 cash owed by Tommy Le to Melendez

- December 22, 2021, $100,000.00 wired to Julie Le

- March 24, 2022, $100,000.00 wired to Julie Le

- May 16, 2022, $100,000.00 wired to Skybox Holdings 81

- June 24, 2022, $60,000.00 wired to Julie Le

- July 17, 2022 to October 24, 2023, $462,803 of construction costs exceeding $250,000 on the Stanton store

- August 1, 2022, $30,000.00 wired to Julie Le

- August 23, 2022, $30,000.00 wired to Julie Le

- September 7, 2022, $30,000.00 wired to Julie Le

- September 30, 2022, $75,000.00 wired to Bloomstone

- September 30, 2022, $25,000.00 check to Hestia Atelier, LLP

- October 3, 2022, $30,000.00 wired to Julie Le

- November 8, 2022, $30,000.00 wired to Julie Le

32.    Tommy, personally and on behalf of the Entity Defendants, asked Melendez to pay 15% of the start-up costs for the Stanton store after the CUP is issued plus all construction costs exceeding $250,000 in exchange for a 15% interest in the Stanton store. The actual costs over $250,000 were $462,803. The Stanton store is open and making profits. Defendants have yet to provide evidence of Melendez's ownership interest or distribute any profits.

33.    On or about December 2019, Ranjeet and Bic met with Tommy to discuss an opportunity to invest in various cannabis stores. Tommy, personally and on behalf of the Entity Defendants, asked Ranjeet and Bic to invest $700,000 in exchange for a 20% interest in the following stores: Fresno Maple, Fresno Bullard, Stanton, Porterville, Wildomar, Costa Mesa, Barstow, San Francisco, Corona, Indio, Oxnard, and Red Bluff.

34.    Tommy, personally and on behalf of the Entity Defendants, also

**COMPLAINT**

promised Ranjeet and Bic that if they invested $1,000,000, they would own 15% of the Stanton retail store.

35.    Tommy, personally and on behalf of the Entity Defendants, also promised Ranjeet and Bic that in exchange for a $500,000 investment, they would own 33% of the Stanton Cultivation facility. (Later Tommy sold the cultivation license without notifying Plaintiffs.)

36.    Based on Defendants' representations, Ranjeet, and Bic agreed to make an investment of $7,800,000 in the cannabis stores located in various locations throughout California including Fresno Maple, Fresno Bullard, Stanton, Stanton Cultivation, Porterville, Wildomar, Costa Mesa, Barstow, San Francisco, Corona, Indio, Port Hueneme, and Canyon Lake.

37.    Bic sent the funds to Defendants by wire transfer on various dates, including the following:

- On May 5, 2021, Bic wired $250,000 to Skybox

- On May 14, 2021, Bic wired $500,000 to Skybox

- On June 4, 2021, Bic wired $110,543.00 to Mary Jo Rossi

- On August 16, 2021, Bic wired $100,000 to Mammoth Legend Consulting

- On September 3, 2021, Bic wired $100,000 Mammoth Legend Consulting

- October 1, 2021, Bic wired $100,000 from inland empire to Mammoth Legend Consulting

- On October 6, 2021, Bic wired $100,000 to Mammoth Legend Consulting

- On October 7, 2021, Bic wired $176,000 to Mammoth Legend Consulting

- On November 1, 2021, Bic wired $100,000 to Mammoth Legend Consulting

- On December 1, 2021, Bic wired $100,000 to Mammoth Legend Consulting

9

**COMPLAINT**

- On December 27, 2021, Bic wired $250,000 to Julie Le
- On December 29, 2021, Bic wired $250,000 to Julie Le
- On March 4, 2022, Ranjeet wired $150,000 to Skybox
- On March 4, 2022, Bic wired $250,000 to Skybox
- On March 25, 2022, Bic wired $150,000 to Skybox
- On April 4, 2022, Bic wired $150,000 to Skybox
- On April 26, 2022, Bic wired $100,000 to Skybox
- On May 6, 2022, Bic wired $200,000 to Skybox
- On June 2, 2022, Bic wired $100,000 to Skybox
- On June 8, 2022, Bic wired $225,000 to Skybox
- On June 22, 2022, Bic wired $150,000 to Skybox
- On July 13, 2022, Bic wired $300,000 to Bloomstone
- On August 5, 2022, Bic wired $100,000 to Bloomstone
- On August 12, 2022, Bic wired $100,000 to Bloomstone
- On August 30, 2022, Bic wired $250,000 to Bloomstone
- On September 20, 2022, Ranjeet wired $50,000 to Skybox
- On October 3, 2022, Bic wired $200,000 to Bloomstone
- On November 1, 2022, Bic wires $200,000 to California Energy Consultants
- On November 17, 2022, Bic wires $300,000 to Bloomstone
- On December 6, 2022, Bic wires $250,000 to California Energy Consultants (the general contractor)
- On January 27, 2023, Bic wired $300,000 to California Energy Consultants (the general contractor)
- On February 17, 2023, Bic wired $100,000 to Bloomstone (Tommy)
- On February 17, 2023, Bic wired $33,778.44 to Mike Sater Red Bluff
- On March 17, 2023, Bic wired $130,000 to Skybox (Tommy)

10

**COMPLAINT**

- On April 5, 2023, Bic wired $200,000 to Bloomstone (Tommy)

- On April 5, 2023, Bic wired $200,000 to California Energy
  Consultants (the general contractor)

- On April 13, 2023, Bic wired $300,000 to Bloomstone (Tommy)

- On April 14, 2023, Bic wired $400,000 to California Energy
  Consultants (the general contractor)

- On April 27, 2023, Bic wired $200,000 to Bloomstone (Tommy)

- On May 19, 2023, Bic wired $250,000 to Skybox (Tommy)

- May 26, 2022, Bic wired $500,000 to Skybox

38.    No Defendant disclosed to Plaintiffs any significant risks associated with their investment in the cannabis stores, nor did they provide any offering memoranda.

39.    In reliance on the representations by Tommy, including, but not limited to, the representations in the preceding paragraphs, Plaintiffs agreed to invest $9,124,885 in the cannabis stores. Through their discussions with Tommy, Julie, Christina, and Devon, Plaintiffs were promised that their investments made them part-owners of the cannabis businesses and stores. Plaintiffs trusted Tommy, Julie, Christina, and Devon and had no reason to believe the representations they were making were untrue or that they were concealing material facts about the terms of the investments.

40.    Defendants requested that Plaintiffs send the funds by wire transfer to bank accounts for entities that they controlled.

41.    On or about the dates set forth in the preceding paragraphs, Plaintiffs wired more than $9,124,885 to purportedly become part-owners in Defendants' cannabis businesses and stores.

42.    Plaintiffs invested in the businesses in reliance on the representations made to Plaintiffs. Despite promises, Defendants provided no written agreement when Plaintiffs wired more than $9,124,885 to Defendants to invest in the cannabis

11

**COMPLAINT**

stores.

## VII.   DEFENDANTS PROVIDE MINIMAL INFORMATION FOLLOWING PLAINTIFFS' INVESTMENTS

43.     After taking Plaintiffs' $9,124,885 investment, Defendants provided almost no information to Plaintiffs regarding the operation of the cannabis stores. Defendants failed to provide written documentation of Plaintiffs' ownership interests in the cannabis stores. On the occasions that Plaintiffs inquired of Tommy, Julie, Christina, and Devon and others involved in the business about the status, Plaintiffs received general responses, or limited and incomplete information, and promises of contracts that never materialized. For those stores for which contracts were provided, Individual Defendants modified the entity documents so they always maintained control despite having minimal equity in them.

44.     For years, Defendants failed (or refused) to apprise, and concealed from Plaintiffs, much of the information about the status of the stores. Despite Plaintiffs' many requests for information, Defendants concealed the true facts and provided general information which were incomplete or misleading. For the most part, Plaintiffs were kept in the dark about important aspects of the businesses, including construction costs, loans, additional debt, other aspects of financing the stores, profits, and status of licenses.

## VIII.  DEFENDANTS DIVERTED FUNDS THAT PLAINTIFFS INVESTED

45.     In or around the beginning of 2024, Plaintiffs learned that the funds they invested to open new stores in San Francisco, Costa Mesa, Barstow, and Corona, were spent. Rather than using the funds for their intended purposes, Defendants diverted some of the investments to apply for licenses for other locations in California and other states, or used them as deposits to reserve certain facilities while the licenses were pending.

46.     On information and belief, Tommy, personally or on behalf of the Entity Defendants or other entities created under other individuals' names, diverted

**COMPLAINT**

1   Plaintiffs' investments to purchase other cannabis cultivation facilities and apply

2   for cannabis licenses in Mississippi, New Jersey, and Florida, some of which have

3   already been issued.

4        47.    Through mismanagement and incompetence, some stores never

5   opened and the funds were exhausted. For Corona, the license was lost simply

6   because Devon failed to mail in a renewal request on time. That store will never

7   open. A store in Barstow burnt down with no sign of being rebuilt. Construction of

8   the Costa Mesa and San Francisco stores are complete but never opened because

9   the funds were diverted. Defendants were awarded the first retail license in Costa

10  Mesa. Defendants convinced unsuspecting investors (including Plaintiffs) into

11  believing that obtaining such license in itself justified the value of the store. They

12  pressured Plaintiffs to invest quickly so the stores could be "first to market" but that

13  was just part of a scheme and artifice to defraud and to obtain money by means of

14  false and fraudulent pretenses, representations and promises.

15       48.    Plaintiffs have demanded the return of the funds, but Defendants have

16  ignored these requests. In fact, Tommy admitted the funds were spent elsewhere

17  and that he merely needed to open the store later.

18       49.    To date, Defendants refuse to acknowledge Plaintiffs' ownership

19  interest in most of the cannabis stores, Defendants have not shared all the profits

20  with Plaintiffs, and they continue to conceal information from Plaintiffs. Plaintiffs

21  are being told "the contracts will be out soon" and that Plaintiffs' approval is not

22  needed because Defendants "run" the stores.

23                    **FIRST CLAIM FOR RELIEF**

24   **Violation of the Racketeer Influenced and Corrupt Organizations Act**

25      **(Against All Defendants and DOES 1 through 100, Inclusive)**

26       50.    Plaintiffs refer to and incorporate as though fully set forth herein

27  Paragraphs 1-49, inclusive, of this Complaint.

28       51.    Plaintiffs are informed and believe that Defendants, and each of them,

constitute an enterprise (hereinafter, the "Enterprise"), as defined by 18 U.S.C. § 1961, the activities of which affect interstate commerce.

52.     Plaintiffs are informed and believe that the purpose, scheme and "racketeering activity," as defined by 18 U.S.C. § 1961, in which the Enterprise is engaged is in fraud, to obtain the money of victims with the intent to defraud Plaintiffs and others by retaining money received from them in violation of 18 U.S.C. §§ 1341 and 1343.

53.     Defendants are persons, as defined by 18 U.S.C. § 1961, employed by or associated with the Enterprise who have participated, directly or indirectly, in the conduct of the Enterprise's affairs, and have specifically participated in the racketeering activity engaged in by the Enterprise, and are thereby liable to Plaintiffs under 18 U.S.C. § 1962(c).

54.     Defendants have communicated the false pretenses of the Enterprise to Plaintiffs over the telephone wires and through other forms of communication in violation of 18 U.S.C. § 1343 (wire fraud). Among other things, between May 2021 and May 2023, Defendants induced Plaintiffs to send multiple wire transfers as identified in Paragraphs 31 and 37 above, and electronic banking transactions by Defendants with Plaintiffs. Defendants required all investors to make their investments by sending funds to one or more of the Defendants (or others) by wire transfers. Plaintiffs are informed and believe, and on that basis allege, that in addition to the wire transfers by Plaintiffs, Defendants secured funds of other investors by wire transfers from at least May 2021 to the present.

55.     Each one of the foregoing electronic funds transfers constitutes a predicate act of wire fraud for the purpose of 18 U.S.C. § 1961. The wire transfers alleged to have occurred between May 2021 and May 2023 are representative only of such transactions known to Plaintiffs at the time of filing this Complaint. Plaintiffs may amend this Complaint to include further transactions as they are discovered.

**COMPLAINT**

56.    Defendants have (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material facts and omitting to state material facts; and (c) engaged in transactions, acts, practices, and courses of business which operated and would operate as a fraud and deceit upon Plaintiffs, constituting a pattern of racketeering activity, as defined by 18 U.S.C. § 1961.

57.    The Individual Defendants and DOES 1-100 participated as principals to further the Enterprise through their investment or reinvestment into other companies with the income derived by Defendants directly or indirectly from the Enterprise's acts of racketeering against Plaintiffs and are thereby liable to the Plaintiffs under 18 U.S.C. § 1962(a).

58.    The Individual Defendants and DOES 1-100 acquired or maintained, directly or indirectly, their interest in, and/or control of, the Enterprise through their ownership or other material interest and are thereby liable to Plaintiffs under 18 U.S.C. § 1962(b).

59.    The Individual Defendants and DOES 1-100 who were employed by or associated with the Enterprise, engaged in, conducted or participated, directly or indirectly, in the conduct of the Enterprise's affairs through a pattern of racketeering activity and are thereby liable to Plaintiffs under 18 U.S.C. § 1962(c).

60.    The Individual Defendants and DOES 1-100 conspired to act in furtherance of the Enterprise to the detriment of Plaintiffs and others and are thereby liable to Plaintiffs under 18 U.S.C. § 1962(d).

## SECOND CLAIM FOR RELIEF

### Breach of Oral Agreement

### (Against Tommy and DOES 1 through 50, Inclusive)

61.    Plaintiffs refer to and incorporate as though fully set forth herein Paragraphs 1-60, inclusive, of this Complaint.

62.    On or about December 2021, Plaintiff Melendez and Defendants entered into an oral agreement with the following terms: Melendez agreed to invest

**COMPLAINT**

1  $100,000.00 plus his percentage fee of the start-up costs after the CUP is issued for

2  Fresno Maple, Fresno Bullard, Porterville, Wildomar, Costa Mesa, Barstow, San

3  Francisco, Corona stores in exchange for a 10% interest in each of them.

4      63.    Tommy, personally and on behalf of the Entity Defendants, asked

5  Melendez to pay 15% of the start-up costs for the Stanton store after the CUP is

6  issued plus all construction costs exceeding $250,000 in exchange for a 15%

7  interest in the Stanton store. The actual costs over $250,000 were $462,803. The

8  Stanton store is open and making profits. Defendants have yet to provide evidence

9  of Melendez's ownership interest or distribute any profits.

10      64.    In or about December 2021, Plaintiffs Ranjeet and Bic and Defendants

11  entered into an oral agreement with the following terms: Ranjeet and Bic agreed to

12  invest $700,000 in exchange for a 20% interest in the following stores: Fresno

13  Maple, Fresno Bullard, Stanton, Porterville, Wildomar, Costa Mesa, Barstow, San

14  Francisco, Corona, Indio, Oxnard, and Red Bluff.

15      65.    Tommy, personally and on behalf of the Entity Defendants, also

16  promised Ranjeet and Bic that if they invested $1,000,000, they would own 15% of

17  the Stanton retail store.

18      66.    Tommy, personally and on behalf of the Entity Defendants, also

19  promised Ranjeet and Bic that in exchange for a $500,000 investment, they would

20  own 33% of the Stanton Cultivation facility. (Later Tommy sold the cultivation

21  license with out notifying Plaintiffs.)

22      67.    Based on Defendants' representations, Ranjeet, and Bic agreed to

23  make an investment of $7,800,000 in the cannabis stores located in various

24  locations throughout California including Fresno Maple, Fresno Bullard, Stanton,

25  Stanton Cultivation, Porterville, Wildomar, Costa Mesa, Barstow, San Francisco,

26  Corona, Indio, Oxnard, and Red Bluff.

27      68.    Plaintiffs satisfied all the terms of the oral agreement and they paid the

28  funds to Defendants as agreed. The funds were paid by wire transfers, checks, and

cash.

69.    Defendants breached the oral agreement by, *inter alia*, using the funds that Plaintiffs invested for other purposes, failing to present proper documents to add Plaintiffs as owners of the business, and withholding profits.

70.    As an actual, legal, and proximate cause of Defendants' breach of the oral agreement, Plaintiffs are entitled to compensatory damages in an amount to be proven at trial.

### THIRD CLAIM FOR RELIEF

### Breach of Implied Covenant of Good Faith and Fair Dealing

### (Against All Defendants and DOES 1 through 50, Inclusive)

71.    Plaintiffs refer to and incorporate as though fully set forth herein Paragraphs 1-70, inclusive, of this Complaint.

72.    Plaintiffs did all, or substantially all of the significant things that the contract required them to do or was excused from having to do those things.

73.    Defendants prevented Plaintiffs from receiving the benefits under the oral contract. Plaintiffs never received their equity shares or voting rights in all the stores. They never received written contracts for all the stores. They have never seen bank statements or detailed financial information, and they have had no input in the business for all the stores.

74.    By doing so, Defendants did not act fairly and in good faith.

75.    Plaintiffs were harmed by Defendants' conduct.

76.    As an actual, legal, and proximate cause of Defendants' breach of the oral agreement, Plaintiffs are entitled to compensatory damages in an amount to be proven at trial.

77.    Defendants and DOES 1 through 50, inclusive, and each of them, are guilty of recklessness, oppression, fraud, and malice within the meaning of Civil Code § 3294. An award of punitive and exemplary damages is justified in an amount according to proof.

**COMPLAINT**

## FOURTH CLAIM FOR RELIEF

### Breach of Fiduciary Duty

### (Against All Defendants, and DOES 1 through 50, Inclusive)

78.     Plaintiffs refer to and incorporate as though fully set forth herein Paragraphs 1-77, inclusive, of this Complaint.

79.     Under the California Corporations Code, the Individual Defendants owe fiduciary duties of care, loyalty, and good faith to Plaintiffs. Defendants' fiduciary duties includes obligations to exercise good business judgment, to act prudently in operating and managing the businesses, to discharge the actions in good faith, and to act in the best interest of all the owners.

80.     Defendants breached their fiduciary duties of loyalty and good faith by, among other things, over-spending, misusing, failing to procure licenses, failing to maintain proper licenses, allocating more votes to themselves despite having minimal ownership interests, and misappropriating investor funds, engaging in self-dealing transactions to enrich and benefit themselves, and artificially inflating the valuation of various stores.

81.     Defendants also breached their fiduciary duties by formulating and executing self-interested plans to change and expand the stores which, on information and belief, include, but are not limited to, diverting some of the assets intended to be used for the Fresno Maple, Fresno Bullard, Stanton, Stanton Cultivation, Porterville, Wildomar, Costa Mesa, Barstow, San Francisco, Corona, Indio, Port Hueneme, and Canyon Lake stores to other stores or projects in other states and misusing the Plaintiffs' funds to over-compensate and enrich themselves, and to disregard the best interests of investors including Plaintiffs.

82.     As an actual, legal, and proximate cause of Defendants' actions that were adverse to Plaintiffs and their self-dealing, including, but not limited to, illegally withdrawing funds for their own benefit, Plaintiffs were harmed in an amount to be proven at trial.

**COMPLAINT**

83.   Defendants and DOES 1 through 50, inclusive, and each of them, are guilty of recklessness, oppression, fraud, and malice within the meaning of Civil Code § 3294. An award of punitive and exemplary damages is justified in an amount according to proof at trial.

### FIFTH CLAIM FOR RELIEF

**Fraud – Intentional Misrepresentation**

**(Against Tommy and DOES 1 through 50, Inclusive)**

84.   Plaintiffs refer to and incorporate as though fully set forth herein Paragraphs 1-83, inclusive, of this Complaint.

85.   Defendants made representations to Plaintiffs regarding the cannabis investment as set forth in Paragraphs 24-49 of this Complaint.

86.   The representations made by Defendants were, in fact, false.

87.   When Defendants made these representations, Defendants knew them to be false and made the representations with the intention to deceive and defraud Plaintiffs to act in reliance on the representations in the matter herein, or with the expectation that Plaintiffs would so act.

88.   Plaintiffs, at the time these representations were made by Defendants, were ignorant of the falsity of the representations and believed them to be true. In reliance on these representations, Plaintiffs were induced and did invest $9,124,885 in the cannabis business. Had Plaintiffs known the actual facts, Plaintiffs would not have taken such actions.

89.   Plaintiffs reasonably relied on Defendants' representations as Defendants held themselves out to be experts in the development of cannabis stores. Plaintiffs reasonably believed Defendants' representations.

90.   As a proximate result thereof, Plaintiffs have been damaged in an amount to be proven at trial but not less than the jurisdictional limit of this Court.

91.   The aforementioned conduct was an intentional misrepresentation, deceit, and/or concealment of material facts known to all Defendants, with the

intention on the part of all Defendants of thereby depriving Plaintiffs of property, legal rights, or otherwise causing injury and was despicable conduct that subjected Plaintiffs to deceit and fraud and in conscious disregard of each Plaintiff's rights so as to justify an award of exemplary and punitive damages.

## SIXTH CLAIM FOR RELIEF

### Fraud – False Promise

### (Against Tommy and DOES 1 through 50, Inclusive)

92.    Plaintiffs refer to and incorporate as though fully set forth herein Paragraphs 1-91, inclusive, of this Complaint.

93.    Defendants made representations to Plaintiffs regarding the cannabis business as set forth in Paragraphs 24-49 of this Complaint.

94.    The representations made by Defendants were, in fact, false and made by Defendants without any intention to fulfill the promises made.

95.    When Defendants made these representations and promises, Defendants knew them to be false and made the representations with the intention to deceive and defraud Plaintiffs to act in reliance on the representations in the matter herein, or with the expectation that Plaintiffs would so act.

96.    Plaintiffs, at the time these representations were made by Defendants, were ignorant of the falsity of the representations and believed them to be true. In reliance on these representations, Plaintiffs were induced to and did invest $9,124,885 in the cannabis businesses. Had Plaintiffs known the actual facts, Plaintiffs would not have taken such actions.

97.    Plaintiffs reasonably relied on Defendants' representations and believed Defendants would fulfill the promises as Defendants held themselves out to be experts in the development of cannabis stores. Plaintiffs believed Defendants intended to fulfill their promises.

98.    As a proximate result thereof, Plaintiffs have been damaged in an amount to be proven at trial but not less than the jurisdictional limit of this Court.

**COMPLAINT**

99.    The aforementioned conduct was an intentional misrepresentation, deceit, and/or concealment of material facts known to all Defendants, with the intention on the part of all Defendants of thereby depriving Plaintiffs of property, legal rights, or otherwise causing injury and was despicable conduct that subjected Plaintiffs to deceit and fraud and in conscious disregard Plaintiffs' rights so as to justify an award of exemplary and punitive damages.

## SEVENTH CLAIM FOR RELIEF

**Fraud – Concealment**

**(Against All Defendants, and DOES 1 through 70, Inclusive)**

100.    Plaintiffs refer to and incorporate as though fully set forth herein Paragraphs 1-99, inclusive, of this Complaint.

101.    In or about January of 2021, Defendants including Tommy, Julie, Christina, and Devon made numerous representations orally and in writing to Plaintiffs regarding the cannabis stores, including promises to sign over equity, false estimates of projections of gross revenue, and false valuations, among other representations set forth in greater particularity in Paragraphs 24-49 .

102.    At the time these representations were made in or about January of 2021, Defendants concealed the true facts about the cannabis stores from Plaintiffs. Defendants concealed the identities of other investors.

103.    At the time these representations were made in or about January of 2021, Defendants concealed the true facts about the plans for the stores, including that some of the stores were not complete, and the true status of the necessary permits. Plaintiffs asked for the money to be returned to them for the stores that were not open and Defendants have refused or stated they did not have it.

104.    Defendants concealed the risks associated with the investments in the cannabis stores. They did not disclose or discuss with Plaintiffs any factors that could adversely affect investment returns to the investors in the stores.

105.    At the time the investments were made from May 2021 to May 2023,

Defendants concealed from Plaintiffs material terms of the investments.

106.   The suppression of these facts was likely to mislead Plaintiffs and did in fact mislead Plaintiffs in light of the other representations made by Defendants concerning the investments in the cannabis stores.

107.   The representations and failures to disclose information and suppressions of information herein alleged to have been made by Defendants, including Tommy, Julie, Christina, and Devon, were made with the intent to induce Plaintiffs to act in the manner herein alleged in reliance thereon.

108.   Plaintiffs, at the time these failures to disclose and suppressions of facts occurred, and at the time Plaintiffs took the actions herein alleged, were ignorant of the existence of the facts that Defendants suppressed and failed to disclose. If Plaintiffs had been aware of the existence of the facts not disclosed by Defendants, Plaintiffs would not have acted as they did, including advancing the $9,124,885 investment.

109.   Had Plaintiffs known the true facts, Plaintiffs would not have invested in the cannabis stores.

110.   As a proximate result thereof, Plaintiffs have been damaged in an amount to be proven at trial but not less than the jurisdictional limit of this Court.

111.   The aforementioned conduct was deceit, and/or concealment of material facts known to all Defendants, with the intention on the part of all Defendants of thereby depriving Plaintiffs of property, legal rights, or otherwise causing injury and was despicable conduct that subjected Plaintiffs to deceit and fraud and in conscious disregard Plaintiffs' rights so as to justify an award of exemplary and punitive damages.

## EIGHTH CLAIM FOR RELIEF

### Negligent Misrepresentation

### (Against Tommy and DOES 1 through 50, Inclusive)

112.   Plaintiffs refer to and incorporate as though fully set forth herein

**COMPLAINT**

Paragraphs 1-111, inclusive, of this Complaint.

113.   Defendants made false representations to Plaintiffs regarding the cannabis stores, as set forth in Paragraphs 24-49.

114.   If Defendants' misrepresentations were not intentionally or recklessly made, then Defendants were negligent in making false, incomplete and misleading statements. Plaintiffs reasonably relied on those misrepresentations.

115.   The factual representations made by Defendants were material and were false and misleading. Defendants made the representations without any reasonable grounds for believing them to be true. They failed to exercise reasonable care or competence in making those representations and in ascertaining of failing to ascertain the truth or falsity of their representations.

116.   Defendants made these false, misleading, and incomplete representations of fact with the intent to influence the actions of Plaintiffs.

117.   Plaintiffs reasonably and justifiably relied on Defendants' misrepresentations about investing their money in the cannabis stores. Defendants knew that Plaintiffs would rely on such representations.

118.   At the time Plaintiffs acted, Plaintiffs were unaware of the true facts would have acted differently if they had known the true facts.

119.   As a proximate result thereof, Plaintiffs have been damaged in an amount to be proven at trial but not less than the jurisdictional limit of this Court.

## NINTH CLAIM FOR RELIEF

### Conversion

### (Against All Defendants and DOES 1 through 100, Inclusive)

120.   Plaintiffs refer to and incorporate as though fully set forth herein Paragraphs 1-119, inclusive, of this Complaint.

121.   Plaintiffs invested their own money in cannabis stores as alleged herein. Specifically, Plaintiffs invested in the Fresno Maple, Fresno Bullard, Stanton, Stanton Cultivation, Porterville, Wildomar, Costa Mesa, Barstow, San

**COMPLAINT**

Francisco, Corona, Indio, Port Hueneme, and Canyon Lake stores.

122.   Defendants, knowing that Plaintiffs had invested money into specific stores, knowingly and intentionally took Plaintiffs' money are used it for purposes other that the stores Plaintiffs invested in, including engaging in self-dealing transactions to enrich and benefit themselves.

123.   Plaintiffs did not consent to these uses of the funds they invested.

124.   When Plaintiffs discovered that the money had not been invested in the cannabis stores for which is was intended, Plaintiffs demanded the return of their investment, but Defendants refused.

125.   As a proximate result thereof, Plaintiffs have been damaged in an amount to be proven at trial but not less than the jurisdictional limit of this Court.

## TENTH CLAIM FOR RELIEF

### Accounting

### (Against All Defendants and DOES 1 through 100, Inclusive)

126.   Plaintiffs refer to and incorporate as though fully set forth herein Paragraphs 1-125, inclusive, of this Complaint.

127.   As victims of Defendants' deliberate, calculated and malicious illegal acts which have resulted in a loss of $9,124,885, Plaintiffs are entitled to have an accounting of the investment Plaintiffs made and monies taken by Defendants.

128.   Therefore, Plaintiffs demand a full accounting by Defendants and DOES 1 through 100, inclusive, and each of them, of all income, expenses, fees, and transfers of money, loans and encumbrances related in any way to their use of Plaintiffs' money and the cannabis businesses and stores.

## ELEVENTH CLAIM FOR RELIEF

### Unfair Business Practices (Cal. Bus. & Prof. Code §17200, *et seq.*)

### (Against All Defendants and DOES 1 through 100, Inclusive)

129.   Plaintiffs refer to and incorporate as though fully set forth herein Paragraphs 1-128, inclusive, of this Complaint.

**COMPLAINT**

130.    Defendants' conduct as alleged above violates California Business and Professions Code § 17200, *et seq*. as constituting unfair, unlawful or fraudulent business practices within the meaning of those statutes. Pursuant to Business & Professions Code § 17206.1, Plaintiffs seek from Defendants, and each of them, restitution and the disgorgement of all earnings. Plaintiffs also seek an injunction to prevent Defendants from engaging in the conduct alleged above, including the use of adhesion contracts that are not provided to the investor and inclusion of the overbroad confidentiality provisions and other onerous terms that are against public policy.

## TWELFTH CLAIM FOR RELIEF

### Imposition of Constructive Trust

### (Against All Defendants and DOES 1 through 100, Inclusive)

131.    Plaintiffs refer to and incorporate as though fully set forth herein Paragraphs 1-130, inclusive, of this Complaint.

132.    By reason of the facts set forth above, Defendants, by means of false and fraudulent representations wrongfully misappropriated and converted money invested in specific cannabis stores by Plaintiffs.

133.    Defendants have been unjustly enriched as a result of the wrongful and fraudulent acts to the detriment of Plaintiffs. Accordingly, Plaintiffs are entitled to bring an alternative claim to impose a constructive trust and force Defendants to restore Plaintiffs' monies.

134.    Therefore, in equity, a constructive trust should be impressed upon the monies of Defendants, including the proceeds of the cannabis stores mentioned herein and Defendants' illicit gains.

WHEREFORE Plaintiffs pray judgment against Defendants as follows:

**As to Plaintiffs' First Claim for Relief:**

1.    For compensatory damages in an amount not less than $9,124,885, and trebling of such damages pursuant to 18 U.S.C. § 1964(c);

**COMPLAINT**

2.    For pre-judgment and post-judgment interest according to law;

3.    For reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c);

4.    For costs of suit incurred pursuant to 18 U.S.C. § 1964(c); and

5.    For such other and further relief as the Court deems just and proper.

**As to Plaintiffs' Second Claim for Relief:**

1.    For damages sustained by Plaintiffs in an amount not less than $9,124,885;

2.    For prejudgment and post-judgment interest according to law;

3.    For reasonable attorneys' fees;

4.    For costs of suit; and

5.    For such other relief as the Court may deem just and appropriate.

**As to Plaintiffs' Third Claim for Relief:**

1.    For compensatory damages in an amount not less than $9,124,885;

2.    For prejudgment and post-judgment interest according to law;

3.    For exemplary and punitive damages pursuant to Civil Code § 3294(a);

4.    For costs of suit; and

5.    For such other and further relief as the Court deems just and proper.

**As to Plaintiffs' Fourth Claim for Relief:**

1.    For compensatory damages in an amount not less than $9,124,885;

2.    For prejudgment and post-judgment interest according to law;

3.    For exemplary and punitive damages pursuant to Civil Code § 3294(a);

4.    For costs of suit; and

5.    For such other and further relief as the Court deems just and proper.

**As to Plaintiffs' Fifth Claim for Relief:**

1.    For compensatory damages in an amount not less than $9,124,885;

2.    For prejudgment and post-judgment interest according to law;

**COMPLAINT**

3.     For exemplary and punitive damages pursuant to Civil Code
         § 3294(a);

4.     For costs of suit; and

5.     For such other and further relief as the Court deems just and proper.

**As to Plaintiffs' Sixth Claim for Relief:**

1.     For compensatory damages in an amount not less than $9,124,885;

2.     For prejudgment and post-judgment interest according to law;

3.     For exemplary and punitive damages pursuant to Civil Code
         § 3294(a);

4.     For costs of suit; and

5.     For such other and further relief as the Court deems just and proper.

**As to Plaintiffs' Seventh Claim for Relief:**

1.     For compensatory damages in an amount not less than $9,124,885;

2.     For prejudgment and post-judgment interest according to law;

3.     For exemplary and punitive damages pursuant to Civil Code
         § 3294(a);

4.     For costs of suit; and

5.     For such other and further relief as the Court deems just and proper.

**As to Plaintiffs' Eighth Claim for Relief:**

1.     For damages sustained by Plaintiffs in an amount not less than
         $9,124,885;

2.     For prejudgment and post-judgment interest according to law;

3.     For reasonable attorneys' fees;

4.     For costs of suit; and

5.     For such other relief as the Court may deem just and appropriate.

**As to Plaintiffs' Ninth Claim for Relief:**

1.     For damages sustained by Plaintiffs in an amount not less than
         $9,124,885;

**COMPLAINT**

2.      For prejudgment and post-judgment interest according to law;

3.      For costs of suit; and

4.      For such other relief as the Court may deem just and appropriate.

**As to Plaintiffs' Tenth Claim for Relief:**

1.      For an accounting of all business and financial records of all the subject cannabis stores in which Plaintiffs invested; and

2.      For payment to Plaintiff of the amount due from Defendants as a result of the account and interest on that amount.

**As to Plaintiffs' Eleventh Claim for Relief:**

1.      For restitution and disgorgement in an amount not less than $9,124,885, pursuant to Business & Professions Code § 17203;

2.      For an order requiring Defendants, and each of them, to show cause, if any they have, why they should not be enjoined as set forth below, during the pendency of this action;

3.      For a temporary restraining order, a preliminary injunction, and a permanent injunction, enjoining Defendants from conducting business in connection with the cannabis stores without Plaintiffs' participation, and/or other injunctive relief as the Court deems just and proper;

4.      For prejudgment and post-judgment interest according to law;

5.      For costs of suit; and

6.      For such other and further relief as the Court deems just and proper.

**As to Plaintiffs' Twelfth Claim for Relief:**

1.      Imposing a constructive trust over the assets of Defendants, including proceeds for the cannabis stores identified herein, that are wrongfully being detained by Defendants, in an amount not less than $9,124,885;

2.      For prejudgment and post-judgment interest according to law; and

3.      For such other and further relief as the Court deems just and proper.

**COMPLAINT**

## <u>DEMAND FOR JURY TRIAL</u>

(F.R.Civ.P. 38(b))

Plaintiffs hereby demand a trial by jury in the above-entitled action, pursuant to Federal Rule of Civil Procedure 38(b).


Dated: April 10, 2024              Respectfully Submitted,

WOMBLE BOND DICKINSON (US) LLP


By:    */s/ John C. Kang*

JOHN C. KANG
Attorneys for *Plaintiffs*
BENJAMIN MELENDEZ, RANJEET
PANNU, and BIKRAMJIT
SINGH PANNU

**COMPLAINT**