BOREN, OSHER & LUFTMAN, LLP
Stephen Z. Boren (SBN 192024)
sboren@bollaw.com
Steven F. Kuehl (SBN 266460)
skuehl@bollaw.com
Aaron M. Gladstein (SBN 266287)
agladstein@bollaw.com
222 N. Pacific Coast Highway, Suite 2222
El Segundo, CA 90245
Telephone: (310) 322-2021
Facsimile: (310) 322-2228

Attorneys for Defendants
CULTURE CANNABIS CLUB,
SKYBOX HOLDINGS 81, MAMMOTH
LEGEND CONSULTING, INC.,
BLOOMSTONE, PROFICIENT
PROFITS, TOMMY LE, JULIE LE,
CHRISTINA D'ANGELO, DEVON
JULIAN, CHRIS FRANCY, and ANH
TRAN

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA—SOUTHERN DIVISION

| | |
|---|---|
| BENJAMIN MELENDEZ, an individual, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> CULTURE CANNABIS CLUB, a California corporation; and DOES 1 through 100, inclusive, et al., <br><br> Defendants. | Case No.: 8:24-cv-00815-DOC-ADSx <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT PURSUANT TO FED. R. CIV. PROC. 12(b)(6)** <br><br> [Notice of Motion/Motion; Request for Judicial Notice; and [Proposed] Order filed concurrently herewith] <br><br> **Hearing** <br> Date:  July 15, 2024 <br> Time:  8:30 a.m. <br> Place:  Courtroom 10A |

# <u>TABLE OF CONTENTS</u>

I.  INTRODUCTION ...................................................................................................1

II.  STATEMENT OF PERTINENT ALLEGATIONS...................................................2

III.  LEGAL STANDARD ............................................................................................3

    A.  Rule 12(b)(6)...................................................................................................3

    B.  Abstention Argument As Part Of Motion To Dismiss. ..................................4

IV.  LEGAL ARGUMENT..........................................................................................4

    A.  The Court Should Abstain From Asserting Jurisdiction Over Plaintiffs' Claims. .............................................................................................................4

        1.  Abstention based on Plaintiffs' requested remedies in violation of the Controlled Substances Act (21 U.S.C. § 841). ...............................4

        2.  *Colorado River* Abstention. ....................................................................7

        3.  *Burford* Abstention...............................................................................11

    B.  Plaintiffs' Complaint Does Not Plead Sufficient Facts To Constitute Cognizable Legal Claims Against Defendants. ..............................................13

        1.  Violation of RICO (18 U.S.C. § 1962). ..............................................13

        2.  Breach of Oral Agreement. ...................................................................16

        3.  Breach of Implied Covenant of Good Faith and Fair Dealing................17

        4.  Breach of Fiduciary Duty......................................................................18

        5.  Fraud (Intentional Misrepresentation) and Fraud (False Promise)..........19

        6.  Fraud (Concealment)..............................................................................20

        7.  Negligent Misrepresentation. ................................................................21

        8.  Conversion. ............................................................................................22

        9.  Accounting. ............................................................................................23

        10.  Unfair Business Practices (Cal. Bus. & Prof. Code § 17200, et seq.) .....24

11. Imposition of Constructive Trust...........................................................25

V.    CONCLUSION.....................................................................................25

i

TABLE OF CONTENTS

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*

   556 U.S. 662 (2009) ........................................................................ 3, 16

*Balistreri v. Pacifica Police Dep't.*

   901 F.2d 696 (9th Cir. 1988) .................................................................. 3

*Bell Atl. Corp. v. Twombly*

   550 U.S. 544 (2007) ............................................................................... 3

*Blumenkron v. Multnomah County*

   91 F.4th 1303 (9th Cir. 2024) .............................................................. 11

*Burford v. Sun Oil Co.*

   319 U.S. 315 (1943) ......................................................................... 2, 11

*Casault v. Federal Nat. Mortg. Ass'n*

   915 F.Supp.2d 1113 (C.D. Cal. 2012) ................................................. 24

*City of Hope National Medical Center v. Genentech, Inc.*

   43 Cal.4th 375 (2008) ......................................................................... 18

*Colorado River Water Conservation Dist. v. U.S.*

   424 U.S. 800 (1976) ........................................................................... 1, 7

*Comwest, Inc. v. American Operator Services, Inc.*

   765 F.Supp. 1467 (C.D. Cal. 1991) ............................................... 14, 15

*County of Allegheny v. Frank Mashuda Co.*

   360 U.S. 185 (1959) ............................................................................... 4

*Courthouse News Serv. v. Planet*

   750 F.3d 776 (9th Cir. 2014) .................................................................. 4

*Cusano v. Klein*

   280 F.Supp.2d 1035 (C.D. Cal. 2003)..................................................23

*Dahon North America, Inc. v. Hon*

   No. 2:11-cv-05835-ODW (JCGx), 2012 WL 1413681 (C.D. Cal. April 24, 2012)......24

*Dallas and Lashmi, Inc. v. 7-Eleven, Inc.*

   112 F.Supp.3d 1048 (C.D. Cal 2015)..........................................17, 22, 23

*Eclectic Properties East, LLC v. Marcus & Millichap Co.*

   751 F.3d 990 (9th Cir. 2014) ...................................................18

*Elkay International Limited v. Color Image Apparel, Inc.*

   No. CV 14-08028 MMM (VBKx), 2015 WL 13917733 (C.D. Cal. June 3, 2015).......19

*Farmers Ins. Exch. v. Zerin*

   53 Cal.App.4th 445 (1997)......................................................22

*Fisk Electric Company v. Obayashi Corp.*

   823 Fed.Appx. 507 (9th Cir. 2020) .............................................8

*Gonzales v. Specialized Loan Servicing LLC*, No.

   1:20-cv-0159 AWI BAM, 2020 WL 2992175 (E.D. Cal. June 4, 2020)......................18

*Gopal v. Luther*

   No. 2:21-cv-00735, 2022 WL 504983 (E.D. Cal. Feb. 18, 2022).....................5

*Grant v. Aurora Loan Services, Inc.*

   736 F.Supp.2d 1257 (C.D. Cal. 2010).........................................16

*H.J. Inc. v. Northwestern Bell Telephone Co.*

   492 U.S. 229 (1989) .........................................................15

*Howard v. Am. Online Inc.*

   208 F.3d 741 (9th Cir. 2000)..................................................13

i

TABLE OF CONTENTS

*Hueso v. Select Portfolio Servicing, Inc.*

  527 F.Supp.3d 1210 (S.D. Cal. 2021) ...................................................................24

*In re Gilead Scis. Sec. Litig.*

  536 F.3d 1049 (9th Cir. 2008). ..........................................................................4

*Khoury v. Maly's of California, Inc.*

  14 Cal.App.4th 612 (1993) ...................................................................16, 24

*Left Coast Ventures Inc. v. Bill's Nursery Inc.*

  No. C19-1297 MJP, 2019 WL 6683518 (W.D. Wash. Dec. 6, 2019) ...........................12

*Magpali v. Farmers Group, Inc.*

  48 Cal.App.4th 471 (1996) ...................................................................20

*Marentes v. State Farm Mutual Auto Ins. Co.*

  224 F.Supp.3d 891 (N.D. Cal. 2016) ...................................................20

*Marzec v. Public Employees' Retirement System*

  236 Cal.App.4th 25 (2015). ...................................................................18

*McKell v. Washington Mutual, Inc*

  142 Cal.App.4th 1457 (2006) ...................................................................16

*MediGrow, LLC v. Natalie M. LaPrade Med. Cannabis Comm'n.*

  487 F.Supp.3d 364  (D. Md. 2020).................................................................2, 12

*Molecular Analytical Sys., Inc. v. Ciphergen Biosystems, Inc.*

  186 Cal.App.4th 696 (2010) ...................................................................18

*Montarone Minerals Corp. v. Bakie*

  867 F.3d 1160 (9th Cir. 2017). ...................................................................8

*Moore v. Kayport Package Exp., Inc.*

  885 F.2d 531 (9th Cir. 1989) ...................................................................13, 19

*Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*

   460 U.S. 1 (1983) ...................................................................................10

*Moss v. U.S. Secret Serv.*

   572 F.3d 962 (9th Cir. 2009) ...................................................................4

*Nakash v. Marciano*

   882 F.2d 1411 (9th Cir. 1989) ...............................................................10

*Nazemi v. Specialized Loan Servicing, LLC*

   637 F.Supp.3d 856 (C.D. Cal. 2022) ......................................................22

*Neilson v. Union Bank of California, N.A.*

   290 F.Supp.2d 1101 (C.D. Cal. 2003) .....................................................22

*Oxford Street Properties, LLC v. Robbins*

   No. CV 10-2999-VBF (RZx), 2010 WL 11549864 (C.D. Cal. Sept. 15 2010) ............25

*R.R. Street & Co. Inc. v. Transport Ins. Co.*

   656 F.3d 966 (9th Cir. 2011) .................................................................10

*Schreiber Distributing Co. v. Serv-Well Furniture Co., Inc.*

   806 F.2d 1393 (9th Cir. 1986) ...............................................................14

*Sedima, S.P.R.L. v. Imrex Co., Inc.*

   473 U.S. 479 (1985) ..............................................................................13

*Seneca Ins. Co., Inc. v. Strange Land, Inc.*

   862 F.3d 835 (9th Cir. 2017) ..............................................................9, 10

*Sensoria, LLC v. Kaweske*

   No. 20-942, 2021 WL 2823080  (D. Colo. July 7, 2021) ...............................5

*Terenkian v. Republic of Iraq*

   694 F.3d 1122 (9th Cir. 2012) .................................................................4

i

TABLE OF CONTENTS

*Tesselle v. McLoughlin*

   173 Cal.App.4th 156 (2009).........................................................................24

*Travelers Indem. Co. v. Madonna*

   914 F.2d 1364 (9th Cir. 1990)....................................................................10

*U.S. v. Morros*

   268 F.3d 695 (9th Cir. 2001)......................................................................11

*UMG Recordings, Inc. v. Global Eagle Entertainment, Inc.*

   117 F.Supp.3d 1092 (C.D. Cal. 2015)........................................................20

*Vess v. Ciba-Geigy Corp. USA*

   317 F.3d 1097 (9th Cir. 2003)....................................................................21

*Wildflower Brands Inc. v. Camacho*

   No. 2:22-cv-09044-MCS-PLA, 2023 WL 3150091 (C.D. Cal. March 20, 2023)
   .........................................................................................………1, 2, 4, 6, 12

**Statutes**

18 U.S.C. § 1961 ......................................................................................14, 15

21 U.S.C. § 841(a)(1) …………………………………………………………5

**Rules**

Federal Rule of Civil Procedure 9(b)..............................................................13

Federal Rule of Civil Procedure 12(b)(6) .........................................................3

i

TABLE OF CONTENTS

## I.    <u>INTRODUCTION</u>

Plaintiffs Benjamin Melendez ("Melendez"), Ranjeet Pannu, and Bikramjit Singh Pannu[1] (collectively, "Plaintiffs") filed this suit alleging myriad breaches and varying degrees of fraud on the part of Defendants[2] in connection with Plaintiffs' investments in cannabis businesses operated in and controlled by the State of California.

Setting aside the objectively false narratives in Plaintiffs' Complaint as to the business dealings *actually* conducted between the parties, the Court ought to entirely abstain from asserting jurisdiction over this case under any of three (3) distinct abstention theories as follows:

1. The Court should abstain from asserting jurisdiction over this case because the remedies Plaintiffs seek, if granted, would violate or encourage the violation of the Controlled Substances Act ("CSA"). *See Wildflower Brands Inc. v. Camacho*, No. 2:22-cv-09044-MCS-PLA, 2023 WL 3150091 (C.D. Cal. March 20, 2023).

2. The Court should abstain from asserting jurisdiction over this case pursuant to the *Colorado River* doctrine[3] as there is a pending, substantially similar proceeding in state court. Notably, just one (1) week before the instant lawsuit was filed, the Pannu Plaintiffs filed a state court action in Riverside County Superior Court against nearly all of the same defendants. The claims in the Riverside action are all subsumed within the allegations of the Complaint currently before this Court. *See* Request for Judicial Notice, Ex. 1 [Complaint filed in *Ranjeet Pannu, et al. v. Culture Cannabis Club, Inc.*, Riverside County Superior Court Case No. CVRI2401791].

---

[1] At times herein, Plaintiffs Ranjeet Pannu and Bikramjit Singh Pannu are referred to, collectively, as the "Pannu Plaintiffs".

[2] This Motion is brought on behalf of all named defendants in this case: Culture Cannabis Club; Skybox Holdings 81; Mammoth Legend Consulting, Inc.; Bloomstone; Proficient Profits; Tommy Le ("Tommy"); Julie Le; Christina D'Angelo; Devon Julian; Chris Francy; and Anh Tran a/k/a/ Anh Rafol.

[3] *Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800 (1976)

3. The Court should also abstain from asserting jurisdiction over this case pursuant to the abstention doctrine stated in *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943) insomuch as "a federal district court may abstain from exercising its jurisdiction 'when federal adjudication would unduly intrude upon complex state administrative processes because … federal review would disrupt state efforts to establish a coherent policy with respect to a matter of substantial public concern.'" *MediGrow, LLC v. Natalie M. LaPrade Med. Cannabis Comm'n.*, 487 F.Supp.3d 364, 376 (D. Md. 2020); *see also Wildflower Brands, supra*, at n. 2 (noting "courts have cited [*Burford* abstention doctrine] when considering similar comity concerns in cannabis cases").

To the extent the Court nonetheless opts to exercise jurisdiction over Plaintiffs' claims, or any of them, then as set forth more fully herein, the Court should dismiss Plaintiffs' claims, and each of them, because Plaintiffs have failed to state claims upon which relief can be granted against Defendants, as discussed in detail hereinbelow.

## II. <u>STATEMENT OF PERTINENT ALLEGATIONS</u>

Defendants deny the allegations set forth in Plaintiffs' Complaint and that Plaintiffs have been damaged, to any degree, as a result of the purported conduct of Defendants, or any of them. Without admitting the truth of Plaintiff's allegations, and solely because of their relevance to the Court's determinations under the instant Motion (particularly as it pertains to the bases for the Court's abstention), Defendants highlight the following allegations from Plaintiffs' Complaint:

- "This case is about an on-going fraudulent cannabis investment racket operated in California by Defendants." Dkt. 1 ["Complaint"], ¶ 24.

- "Ostensibly, the Individual Defendants operate a cannabis investment enterprise by which they apply for cannabis licenses throughout the United States, sell equity to investors but at different valuations (depending on the investor and the amounts sought) to develop, open, and manage cannabis stores in various locations throughout California, including in the counties of Los Angeles, Orange, and Riverside." Complaint, ¶ 27.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS-FRCP 12(b)(6)

- "Based on Defendants' representations, Melendez agreed to make a cash investment of $100,000.00 and contribute his percentage of the start-up costs to construct and open cannabis stores after the applicable CUP is issued for various locations throughout California including, Fresno Maple, Fresno Bullard, Porterville, Wildomar, Costa Mesa, Barstow, San Francisco, and Corona." Complaint, ¶ 31.

- "Based on Defendants' representations, Ranjeet, and Bic agreed to make an investment of $7,800,000 in the cannabis stores located in various locations throughout California including Fresno Maple, Fresno Bullard, Stanton, Stanton Cultivation, Porterville, Wildomar, Costa Mesa, Barstow, San Francisco, Corona, Indio, Port Hueneme, and Canyon Lake." Complaint, ¶ 36.

- "In reliance on the representations by Tommy, including, but not limited to, the representations in the preceding paragraphs, Plaintiffs agreed to invest $9,124,885 in the cannabis stores. Through their discussions with Tommy, Julie, Christina, and Devon, Plaintiffs were promised that their investments made them part-owners of the cannabis businesses and stores." Complaint, ¶ 39.

- "On or about the dates set forth in the preceding paragraphs, Plaintiffs wired more than $9,124,885 to purportedly become part-owners in Defendants' cannabis businesses and stores." Complaint, ¶ 41.

- "To date, Defendants refuse to acknowledge Plaintiffs' ownership interest in most of the cannabis stores, Defendants have not shared all the profits with Plaintiffs, and they continue to conceal information from Plaintiffs." Complaint, ¶ 49.

## III. **LEGAL STANDARD**

### A. **Rule 12(b)(6).**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint if it lacks a cognizable legal theory or does not allege sufficient facts to support a cognizable legal theory. *Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1988). To survive a motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a

claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). The Court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

### B. Abstention Argument As Part Of Motion To Dismiss.

In *Wildflower Brands Inc. v. Camacho*, No. 2:22-cv-09044-MCS-PLA, 2023 WL 3150091 (C.D. Cal. March 20, 2023), this Court specifically noted that on the question of whether abstention is properly raised under 12(b)(1) or 12(b)(6), "[t]he distinction … is immaterial [], as all documents extrinsic to the pleadings that are necessary for adjudication of this motion [to dismiss] are subject to judicial notice or incorporated by reference into the pleadings. Thus, the instant motion may be treated as a facial attack to subject-matter jurisdiction or an attack for failure to state a claim, which are governed by similar standards." *Id*., at *1 (citing *Terenkian v. Republic of Iraq*, 694 F.3d 1122, 1131 (9th Cir. 2012); *Courthouse News Serv. v. Planet*, 750 F.3d 776, 779, n. 2 (9th Cir. 2014) ("This case does not require us to decide which Rule, if either, provides the correct vehicle for a motion to abstain")).

## IV. LEGAL ARGUMENT

### A. The Court Should Abstain From Asserting Jurisdiction Over Plaintiffs' Claims.

There are three (3) independent legal bases for the Court's abstention in this matter, upon any one of which the Court should refuse to adjudicate Plaintiffs' claims. *See County of Allegheny v. Frank Mashuda Co*., 360 U.S. 185, 188 (1959) (noting the general range of circumstances in which a district court "may decline to exercise or postpone the exercise of its jurisdiction").

### 1. Abstention based on Plaintiffs' requested remedies in violation of the Controlled Substances Act (21 U.S.C. § 841).

Plaintiffs do not mince words regarding the nature of Defendants' businesses in which Plaintiffs purportedly invested. As stated in their Complaint, Plaintiffs admit to

having invested in cannabis stores and cannabis businesses purportedly operated by Defendants in various locales within the State of California. *See* Dkt. 1, ¶¶ 31, 36, 39, 41. Because of these allegations, and particularly because of the remedies Plaintiffs seek in connection with their investments in cannabis businesses at issue, this Court ought to abstain entirely from asserting jurisdiction over this matter.

"The federal Controlled Substances Act ('CSA') provides that it is unlawful to 'manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance,' including marijuana." *Gopal v. Luther*, No. 2:21-cv-00735, 2022 WL 504983 at *3 (E.D. Cal. Feb. 18, 2022) (citing 21 U.S.C. § 841(a)(1)). "California law, by contrast, permits some 'commercial activity relating to medicinal cannabis or adult-use cannabis.'" *Ibid*.

Recent cases from California district courts, including this Court, are instructive regarding the Court's abstention under these circumstances.

In *Gopal, supra*, Gopal agreed to purchase the Luthers' interests in a California cannabis cultivation business for $700,000, in exchange for which the Luthers "agreed to transfer their cannabis cultivation license and permit." *Id*., at *1. A dispute ensued, and Gopal originally filed his action in Nevada (California) County Superior Court alleging claims for breach of contract, fraud, and breach of fiduciary duty. *Ibid*. The Luthers then removed to federal court invoking diversity jurisdiction. Gopal then filed a motion with the district court through which he "move[d] to remand the action to state court for lack of jurisdiction; in the alternative, he ask[ed] the court to abstain from deciding this case." *Ibid*.

In granting Gopal's motion for abstention—which resulted in a *de facto* remand to the Nevada County Superior Court—the district court specifically noted that "[i]n considering whether to adjudicate cannabis disputes, district courts generally have found they '**may not vindicate equity in or award profits from a business that grows, processes, and sells marijuana**.'" *Gopal*, at *3 (citing *Sensoria, LLC v. Kaweske*, No. 20-942, 2021 WL 2823080, at *8 (D. Colo. July 7, 2021) (emphasis added)). In finding the *Sensoria* court's "reasoning persuasive," the *Gopal* Court determined that the remedies

Gopal seeks, *i.e.*, "the transfer of a cannabis license and permit" and "damages resulting from defendants' withholding of the 'license,'" "both [] directly contravene federal law." *Id*., at **3-4. The district court unambiguously concluded as follows: "This court cannot enforce an ownership interest in a marijuana business or order damages derived from the cultivation and sale of marijuana, which is [defendants'] singular enterprise." *Id*., at *4.

Just last year, this Court ruled in alignment with the *Gopal* court's abstention reasoning in *Wildflower Brands Inc. v. Camacho*, No. 2:22-cv-09044-MCS-PLA, 2023 WL 3150091 (C.D. Cal. March 20, 2023). In *Wildflower*, plaintiff contracted with defendant to purchase "'a vertically integrated medical and recreational cannabis business involved in the cultivation, distribution, and retail sale of cannabis.'" *Id*., at *1. Plaintiff paid $7.9 million of an $8 million purchase price and a dispute ensued, resulting in an arbitration award. *Ibid*. Post arbitration, plaintiff filed suit in this Court, contending "it [was] entitled to recover the payments it made in connection with the failed transaction." *Ibid*. In doing so, plaintiff asserted claims for "(1) breach of contract, (2) unjust enrichment, (3) quasi contract, (4) money had and received, (5) breach of implied contract, and (6) conversion." *Ibid*. In granting defendants' Rule 12(b)(6) motion, this Court stated the following:

> "The Court agrees with Defendants that the relief sought in this action, if granted, would violate federal law. The record demonstrates that Plaintiff and Defendants are all in the business of cannabis distribution. (Citation.) The agreement at the heart of this dispute is a contract for sale of a cannabis dispensary business. (Citation.) Plaintiff seeks to recover payments it made toward the purchase of this business and prays for disgorgement of profits, restitution, and other equitable relief. (Citation.)"

*Wildflower*, 2023 WL 3150091 at *2.

Plaintiffs' allegations in the case at bar effectively mirror those in *Wildflower* insomuch as "granting at least some of the remedies sought in this action would run afoul of federal law." *Id*., at *2. First, in *Wildflower*, plaintiff sought "the remedy of disgorgement of profits," which this Court noted "would thus 'award profits from a

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS-
FRCP 12(b)(6)

business that … sells marijuana.'" *Id*., at *2. Here, "[p]ursuant to Business and Professions Code § 17206.1, Plaintiffs seek from Defendants, and each of them, restitution and the disgorgement of all earnings." Complaint, ¶ 130; *see also* Prayer for Relief as to Plaintiffs' Eleventh Claim, ¶ 1 ("For restitution and disgorgement in an amount not less than $9,124,885"). And, just like *Wildflower*, there is not a single source of alleged profits in this case that does *not* arise from Defendants' cannabis businesses. *See* Complaint, ¶ 49 ("Defendants refuse to acknowledge Plaintiffs' ownership interest in most of the cannabis stores [and] Defendants have not shared all the profits with Plaintiffs"). Second, in *Wildflower*, the plaintiff requested restitution, which the Court noted "would require the Court to offset any award by Plaintiff's … profits from the 'cultivation, distribution, and retail sale of cannabis' … to make Plaintiff whole." *Wildflower*, at *2. As noted above, Plaintiffs' Complaint in this matter suffers from the exact same issue. *See* Complaint, ¶ 130, Prayer For Relief, ¶ 1.

Based on the foregoing, Defendants request the Court abstain from adjudicating this matter because to do so would violate or encourage the violation of the CSA. The Court should dismiss or, at the very least, stay this matter "to allow Plaintiff[s] to seek relief in a court or other venue of competent jurisdiction." *Wildflower*, at *4. Indeed, as discussed immediately below, two of the three Plaintiffs already availed themselves of this option prior to filing the within lawsuit.

### 2. *Colorado River* Abstention.

If the Court is not inclined to abstain from adjudicating this matter (or any portion thereof) based on potential violations of the CSA, the Court nonetheless should abstain based on the doctrine proffered by the United States Supreme Court in *Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800 (1976) (the "*Colorado River* doctrine"). The *Colorado River* doctrine accords federal deference to parallel state court proceedings based on a variety of factors. As noted by the Supreme Court, "[n]o one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise is

7

required." *Colorado River*, 424 U.S. at 818-819. The Ninth Circuit has recognized the following eight (8) factors in considering the application of the *Colorado River* doctrine:

> "(1) which court first assumed jurisdiction over any property at stake; (2) the inconvenience of the federal forum; (3) the desire to avoid piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether federal law or state law provides the rule of decision on the merits; (6) whether the state court proceedings can adequately protect the rights of the federal litigants; (7) the desire to avoid forum shopping; and (8) whether the state court proceedings will resolve all issues before the federal court."

*Montarone Minerals Corp. v. Bakie*, 867 F.3d 1160, 1166 (9th Cir. 2017).

A review of these factors against the present circumstances reveals that, on balance, this Court should abstain from adjudicating this matter in deference to the parallel state court proceedings initiated in Riverside County Superior Court by the Pannu Plaintiffs (the "Riverside Action"). *See* Request for Judicial Notice, Ex. 1 (the "Riverside Complaint").

(1) & (4) The current matter and the Riverside Action both concern Plaintiffs'[4] alleged rights to profits from "several retail cannabis dispensaries throughout southern California." Riverside Complaint, ¶ 18; *cf*. Complaint, ¶ 27. The Riverside Action was filed one week ***before*** the instant case.

(2) Defendants concede there is little inconvenience of the federal forum given the relatively close proximity of both venues. *See Fisk Electric Company v. Obayashi Corp.*, 823 Fed.Appx. 507, 508 (9th Cir. 2020).

(3) "'Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results.'" *Montarone*, 867 F.3d at 1167. "For this factor to favor a stay, 'the case must raise a special concern about piecemeal litigation, which can be remedied by staying or dismissing the federal proceeding,' and which 'the court could [not] have avoided

---

[4] While plaintiff Melendez is not a plaintiff in the Riverside Action, nothing prevents him from seeking to adjudicate his claims—as the Pannu Plaintiffs have chosen to do—in the Riverside Action.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS-FRCP 12(b)(6)

by other means.'" *Ibid*. Here, Plaintiffs are asking two different tribunals to consider the same issue, *i.e.*, the viability of Plaintiffs' investments in various cannabis ventures in California purportedly operated by Defendants and Defendants' alleged misrepresentations (intentional and negligent) leading to the same. Riverside Complaint, ¶¶ 29-41; *cf.* Complaint, ¶¶ 84-119. Moreover, there indeed is a special concern about piecemeal litigation in this matter, which can be remedied by staying or dismissing this action: this Court's avoidance of violating or encouraging violations of the CSA in deference to the Riverside Superior Court, which is equipped to adjudicate cannabis-related claims under California law.

(5) As noted above, California state law provides the rule of decision on the merits of this action and the Riverside Action because both seek remedies pertaining to profits stemming from Defendants' cannabis ventures. Concluding otherwise would run afoul (or risk running afoul) of the federal CSA. That Plaintiffs included a RICO claim—albeit flawed—in the current case does not change this reality. *See Seneca Ins. Co., Inc. v. Strange Land, Inc.*, 862 F.3d 835, 844 (9th Cir. 2017) ("That state law provides the rule of decision supports abstention only when the state law questions are themselves complex and difficult issues better resolved by a state court; it is not enough that a state law case is complex because it involves numerous parties or claims"). Here, the *difficulty* stems not from the fact that the state law questions are *per se* complex, but rather from the fact that deciding the merits of these cases in state court under California state law is the only viable option.

(6) In a similar vein, the Riverside Action can adequately protect the rights of the federal litigants because there is no other viable option that does not encourage violations of federal law. "The adequacy factor looks to whether the state court might be unable to enforce federal rights." *Seneca*, 862 F.3d at 845. Of course, here, there *are no federal rights*; rather, the exact opposite is true, *i.e.*, the

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS-FRCP 12(b)(6)

remedies Plaintiffs seek would encourage violations of federal law. *See Travelers Indem. Co. v. Madonna*, 914 F.2d 1364, 1370 (9th Cir. 1990) ("This factor involves the *state* court's adequacy to protect *federal* rights, not the federal court's adequacy to protect state rights") [emphasis in original].)

(7) "Forum shopping refers to '[t]he practice of choosing the most favorable jurisdiction or court in which a claim might be heard.' (Citation.) To avoid forum shopping, courts may consider 'the vexatious or reactive nature of either the federal or the state litigation.'" *R.R. Street & Co. Inc. v. Transport Ins. Co.*, 656 F.3d 966, 981 (9th Cir. 2011). Here, the Pannu Plaintiffs already had filed their similar claims in the Riverside Action one week prior to joining their co-plaintiff, Melendez, in filing the instant action. That they still joined this action, and that Melendez chose to assert his claims only in this action, notwithstanding the CSA's likely impact on this Court's jurisdiction, appears to be the ultimate exercise in vexatious filing and attempted scorched-earth litigation against Defendants. *See Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 17, n. 20 (1983) ("filing of the federal suit was a 'defensive tactical maneuver' based on a contrived federal claim; hence, a stay was called for as 'a means to deter vexatious use of the federal courts'").

(8) "The parallelism factor provides that 'the existence of a substantial doubt as to whether the state proceedings will resolve the federal action precludes a *Colorado River* stay or dismissal.'" *Seneca*, 862 F.3d at 845 (citing *R.R. Street*, 656 F.3d at 982). "Though 'exact parallelism … is not required,' substantial similarity of claims is necessary before abstention is available.'" *Id*., at 845 (citing *Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th Cir. 1989). As already discussed, the claims in this action and the Riverside Action are substantially similar in that they pertain to allegations of Defendants' purported fraud and breaches of fiduciary duties owed to Plaintiffs in connection with Plaintiffs' investments in various California cannabis businesses purportedly operated by

10

Defendants. *See* Riverside Complaint, ¶¶ 20-28; *cf.* Complaint, ¶¶ 29-42.

Based on the foregoing, if the Court does not abstain from adjudicating this matter given the prospect of CSA violations, there exists ample grounds upon which this Court may nonetheless abstain under *Colorado River*.

### 3. *Burford* Abstention.

As an alternative to abstention under either CSA violation avoidance or *Colorado River*, this Court may also abstain from adjudicating Plaintiffs' claims pursuant to *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943). "*Burford* abstention is designed to 'protect[] complex state administrative processes from undue federal influence.'" *Blumenkron v. Multnomah County*, 91 F.4th 1303, 1312 (9th Cir. 2024); *Burford*, 319 U.S. at 327 ("Delay, misunderstanding of local law, and needless federal conflict with the State policy, are the inevitable product of this double system of review"). As the Ninth Circuit recently discussed in *Blumenkron*,

> "Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are 'difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case at bar'; or (2) where the 'exercise of federal review … would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.'"

*Blumenkron*, 91 F.4th at 1312.

"Burford allows courts to 'decline to rule on an essentially local issue arising out of a complicated state regulatory scheme.' Its application requires … first, that the state has chosen to concentrate suits challenging the actions of the agency involved in a particular court; second, that federal issues could not be separated easily from complex state law issues with respect to which state courts might have special competence; and third, that federal review might disrupt state efforts to establish a coherent policy." *U.S. v. Morros*, 268 F.3d 695, 705 (9th Cir. 2001).

This Court recently noted that "courts have cited [the *Burford* abstention doctrine]

when considering similar comity concerns in cannabis cases." *Wildflower Brands Inc. v. Camacho*, No. 2:22-cv-09044-MCS-PLA, 2023 WL 3150091 at *3, n. 2 (C.D. Cal. March 20, 2023) (referencing *MediGrow, LLC v. Natalie M. LaPrade Med. Cannabis Comm'n.*, 487 F.Supp.3d 364, 376 (D. Md. 2020); *Left Coast Ventures Inc. v. Bill's Nursery Inc.*, No. C19-1297 MJP, 2019 WL 6683518 at *2 (W.D. Wash. Dec. 6, 2019)). Moreover, notwithstanding the fact that *Burford* abstention primarily has been employed in cases in which equitable relief is sought, this Court noted in *Wildflower, supra*—a case involving an even split of equitable claims and common law damages claims—that "[t]he doctrine might have promising application here," if defendants raised *Burford* abstention.

The circumstances of the case at bar satisfy the Ninth Circuit criteria for *Burford* application, such that this Court should abstain from accepting jurisdiction over this matter.

First, in California, the operations of cannabis businesses are governed by the California Department of Cannabis Control. Cannabis operations in California must obtain a license through the Department of Cannabis Control as well as pertinent licenses and permits from the various locales (city and/or county) in which they operate. Indeed, Plaintiffs acknowledge as much in their Complaint. *See* Complaint, ¶ 28 ("Plaintiffs allege that Defendants Devon, Julie and Chris obtained and maintained the [state and local] licenses through [defendant] Culture Cannabis"). Plaintiffs cannot deny that the conduct of which they accuse Defendants pertains, at least in part, to actions that would be governed and/or controlled by these California state and local agencies. *See, e.g.*, Complaint, ¶ 80 ("Defendants breached their fiduciary duties of loyalty and good faith by, among other things, over-spending, misusing [*sic*], **failing to procure licenses**, **failing to maintain proper licenses** …") [emphasis added]). And, it is axiomatic that California concentrates suits pertaining to these agencies, and the cannabis industry as a whole, in state court because of the inherent violations of the CSA that would otherwise follow if these claims were adjudicated in federal court.

Second, it is likewise self-evident that California state courts have special competence in adjudicating cases involving the California cannabis industry. Moreover,

for the reason stated immediately above, *i.e.*, that federal adjudication of these claims would run afoul of the CSA (or at least have the potential to do so), there are no "federal issues" to assess in terms of their ease of separation from the complex state law questions.

Third, and similar to the second factor, federal review does not appear to be at all appropriate here, regardless of whether the rationale is to avoid disruption to California's efforts to establish coherent policies pertaining to the regulation of the cannabis industry, or simply because the United States does not have any such policies (because they would violate federal law).

For these reasons, *Burford* abstention should apply to Plaintiffs' claims currently before this Court.

**B.**    **Plaintiffs' Complaint Does Not Plead Sufficient Facts To Constitute Cognizable Legal Claims Against Defendants.**

If the Court does not abstain from adjudicating this matter based on any of the three theories discussed, then the Court still should grant Defendants' instant Motion because—as addressed in detail below—Plaintiffs have not adequately pled their claims, or any of them.

**1.**    **Violation of RICO (18 U.S.C. § 1962).**

To state a claim under 18 U.S.C. section 1962(c), Plaintiffs must show "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985). To state a claim under Section 1962(d), "Plaintiffs must allege either an agreement that is a substantive violation of RICO or that the defendants agreed to commit, or participated in, a violation of two predicate offenses." *Howard v. Am. Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000).

In the Ninth Circuit, courts apply "the particularity requirements of [Federal Rule of Civil Procedure] 9(b) to RICO claims. Rule 9(b) requires that the pleader state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 541 (9th Cir. 1989) (Internal citations omitted). "'Allegations of fraud under section 1962(c) must

identify the time, place, and manner **of each fraud** plus the **role of each defendant in each scheme**.'" *Id*., at 541 (quoting *Schreiber Distributing Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1401 (9th Cir. 1986)) (Emphasis added.). "[I]t is significant that fraud-based RICO claims may be dismissed if they fail to satisfy Rule 9(b)'s requirement that fraud claims be plead with particularity. Hence, to withstand defendants' [] challenge to plaintiff's RICO claims, plaintiff was obligated to plead the time, date, place, and content of the alleged misrepresentations so that an inference of fraud could have been drawn by the Court." *Comwest, Inc. v. American Operator Services, Inc.*, 765 F.Supp. 1467, 1476 (C.D. Cal. 1991) (Internal citations omitted).

Plaintiffs' Complaint does not come close to meeting the heightened pleading requirements of Rule 9(b). First, rather than endeavoring to plead the role of each defendant in the purported scheme, Plaintiffs indiscriminately lump all Defendants together without identifying what each one is alleged to have actually done. *See, e.g.,* Complaint, ¶ 54 ("Defendants induced Plaintiffs to send multiple wire transfers as identified in Paragraphs 31 and 37 above, and electronic banking transactions by Defendants with Plaintiffs"); ¶ 56 ("Defendants have (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material facts and omitting to state material facts; and (c) engaged in transactions, acts, practices, and courses of business which operated and would operate as a fraud and deceit upon Plaintiffs, constituting a pattern of racketeering activity, as defined by 18 U.S.C. § 1961").

The inadequacy of Plaintiffs' pleading is further highlighted upon a review of Plaintiffs' allegations from earlier in the Complaint that are incorporated by reference into the RICO claim. First, with respect to Melendez, Plaintiffs allege that "Tommy, personally and on behalf of the Entity Defendants, asked Melendez to invest $100,000.00 plus his percentage fee of the start-up costs after a conditional use permit … is issued for [multiple] locations … in exchange for, initially a 10% interest in [those] stores." Complaint, ¶ 30. Despite alleging that those (unnamed) representations were made by Tommy, personally, and on behalf of the Entity Defendants only (without alleging Tommy's purported

authority to act on behalf of several of the Entity Defendants including Bloomstone, Culture Cannabis Club, and Proficient Profits), Plaintiffs then illogically jump in the very next paragraph to Melendez purportedly having acted "[b]ased on **Defendants'** representations." *Id*., ¶ 31 (emphasis added). "Defendants" are defined on page 2 of Plaintiffs' Complaint as all named defendants in the case.

Plaintiffs' allegations of the misrepresentations purportedly made to the Pannu Plaintiffs suffer from the same defects. *See* Complaint, ¶¶ 35-36; *see also* ¶ 39 ("In reliance on the representations by Tommy … Plaintiffs agreed to invest $9,124,885 in the cannabis stores. Through their discussions with Tommy, Julie, Christina, and Devon, Plaintiffs were promised that their investments made them part-owners of the cannabis business and stores"). Plaintiffs do not provide any explanation for their incongruent jump from alleged representations made by Tommy to purported discussions with four individual defendants, nor is there even a scintilla of detail regarding when these purported discussions took place or by what means, *i.e.*, in person, over telephone, emails, etc.

Plaintiffs' RICO claim equally fails because Plaintiffs have not adequately alleged Defendants' engagement in a pattern of racketeering activity. "[T]o prove a pattern of racketeering activity, a plaintiff … must show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 239 (1989) [emphasis original]. In *Comwest, supra*, this Court deemed Plaintiffs' pattern allegations insufficient where "Plaintiff merely tracks the language of the statute by alleging 'continuity' and then asserts, without any apparent factual support, that [defendant] NTS has 'engaged in parallel [fraudulent] conduct with its other sales representatives.'" *Comwest*, 765 F. Supp. at 1477. Plaintiffs' allegations at bar fare no better. *See* Complaint, ¶ 56 (alleging general participation "in transactions, acts, practices, and courses of businesses … constituting a pattern of racketeering activity, as defined by 18 U.S.C. § 1961"); ¶ 59 (*same*).

The vagueness with which Plaintiffs plead their RICO claim is readily apparent. Plaintiffs' allegations simply lump all Defendants together in purported conversations by

unknown means that took place at unknown times at unknown locations. Plaintiffs have simply parroted the language of the RICO statute "in a formulaic recitation of the elements of [the] cause of action," and failed to adequately apprise Defendants of the nature of the claim being asserted against them. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). For these reasons, Defendants' Motion ought to be granted.

### 2.  Breach of Oral Agreement.

"To plead … a claim [for breach of oral contract] under California law, plaintiff must allege: (1) the existence of a contract; (2) her performance of the contract, or a legally cognizable excuse for nonperformance; (3) defendant's breach; and (4) resulting damage." *Grant v. Aurora Loan Services, Inc.*, 736 F.Supp.2d 1257, 1266 (C.D. Cal. 2010). "An oral contract may be pleaded generally as to its effect." *Khoury v. Maly's of California, Inc.*, 14 Cal.App.4th 612, 616 (1993).) "In order to plead a contract by its legal effect, plaintiff must "allege the substance of its relevant terms." *McKell v. Washington Mutual, Inc.*, 142 Cal.App.4th 1457, 1489 (2006) (Internal citations omitted).)

Here, there are no allegations regarding the material terms of any purported contracts that require defendant Tommy to actually do anything vis-à-vis any of the Plaintiffs. Rather, per Plaintiffs' allegations, they were to pay monies to Defendants, which, in turn provided Plaintiffs with percentage ownership interests in varying amounts with respect to certain cannabis stores throughout California. *See e.g.*, Complaint, ¶ 66 ("Tommy, personally and on behalf of the Entity Defendants, also promised Ranjeet and Bic that in exchange for a $500,000 investment, they would own 33% of the Stanton Cultivation facility"); *see also* ¶¶ 63-65 (*accord*).

Furthermore, there is no cognizable correlation between the purported terms of the oral contract, as alleged by Plaintiffs, and Defendants' purported breaches thereof. Accepting Plaintiffs' allegations as true for the purposes of this discussion, Plaintiffs allege that Defendants purportedly breached the oral agreement by "using the funds that Plaintiffs invested for other purposes, failing to present proper documents to add Plaintiffs as owners of the business, and withholding profits." Complaint, ¶ 69. However, nowhere within their

Complaint do Plaintiffs allege that the terms of any purported oral contract between the parties obligated Defendants, or any of them, to (i) use funds for a specific purpose; (ii) present documents to add Plaintiffs as owners; or (iii) distribute profits."[5] It does not follow that Defendants purportedly can breach the terms of an oral agreement that does not actually exist. *See Dallas and Lashmi, Inc. v. 7-Eleven, Inc.*, 112 F.Supp.3d 1048, 1059 (C.D. Cal 2015) ("to state a complaint for breach of an oral contract, the complaint must adequately allege 'how such an oral contract was formed, the terms thereof, [and] how it was breached'").

In addition, adding to the uncertainty of their claim is the fact that Plaintiffs freely oscillate between the number of oral contracts that purportedly exist between the parties. Plaintiffs appear to allege that Melendez and the Pannu Plaintiffs entered into ***at least*** two separate oral contracts with distinct terms (Complaint, ¶¶ 62-67), yet Plaintiffs then allege their own compliance with only a single "oral agreement" as well as Defendants' purported breaches of only a single "oral agreement." Complaint, ¶¶ 68-69. Finally, on this last point, Plaintiffs' allegations reference having entered into (albeit an indecipherable number) certain oral contracts with all Defendants, yet the caption of the Second Claim for Relief makes clear that the claim is only alleged against Tommy.

Simply put, Defendants cannot make heads or tails of Plaintiffs' claim given the lack of adherence to basic pleading requirements.

### 3. <u>Breach of Implied Covenant of Good Faith and Fair Dealing.</u>

"'The prerequisite for any action for breach of the implied covenant of good faith and fair dealing is the existence of a contractual relationship between the parties, since the covenant is an implied term in the contract.' The covenant does not exist independently of the underlying contract." *Gonzales v. Specialized Loan Servicing LLC*, No. 1:20-cv-0159

---

[5] On this latter alleged breach, it is worth noting Plaintiffs' subtle admission that they ***have*** indeed received profits from Defendants. *See* Complaint, ¶ 49 ("To date … Defendants have not shared **all the profits** with Plaintiffs") (emphasis added).

AWI BAM, 2020 WL 2992175 at *4 (E.D. Cal. June 4, 2020) (quoting *Molecular Analytical Sys., Inc. v. Ciphergen Biosystems, Inc.*, 186 Cal.App.4th 696, 712 (2010)).

As noted above, Plaintiffs have not adequately stated a claim for breach of oral contract. Thus, it necessarily follows that Plaintiffs too have not stated a claim for breach of the implied covenant of good faith and fair dealing against any defendant, let alone all Defendants against whom this claim is asserted.

### 4. Breach of Fiduciary Duty.

In California, "[w]hether a fiduciary duty exists is generally a question of law. Whether the defendant breached that duty toward the plaintiff is a question of fact." *Marzec v. Public Employees' Retirement System*, 236 Cal.App.4th 25, 29 (2015). "'[B]efore a person can be charged with a fiduciary obligation, he must either knowingly undertake to act on behalf and for the benefit of another, or must enter into a relationship which imposes that undertaking as a matter of law." *City of Hope National Medical Center v. Genentech, Inc.*, 43 Cal.4th 375, 386 (2008).

Here, in yet another improper "formulaic recitation of the elements," Plaintiffs aver that "[u]nder the California Corporations Code, the Individual Defendants owe fiduciary duties of care, loyalty, and good faith to Plaintiffs." Complaint, ¶ 78. Nowhere within their Complaint do Plaintiffs actually identify the factual basis for these allegations or the specific section(s) under the California Corporations Code from which these fiduciary obligations purportedly derive. Indeed, the Complaint contains only a single mention of the California Corporations Code—the vague reference from Paragraph 78 noted above.

And, much like their other defective claims, Plaintiffs allege only that the "Individual Defendants" owed fiduciary duties to Plaintiffs, but that ***all Defendants*** somehow breached the same fiduciary duties purportedly owed only by the Individual Defendants. *See* Complaint, ¶¶ 80-83. The Court should not countenance such poor drafting, particularly when the result is that Defendants cannot discern which of them are actually being accused of misconduct. *See Eclectic Properties East, LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014) ("[T]o be entitled to the presumption of

truth, allegations in a complaint … must contain sufficient allegations of underlying facts **to give fair notice and to enable the opposing party to defend itself effectively**") [emphasis added].

### 5. <u>Fraud (Intentional Misrepresentation) and Fraud (False Promise).</u>

Plaintiffs' Fifth Claim for Fraud (Intentional Misrepresentation) and Sixth Claim for Fraud (False Promise) fail to meet the heightened pleading requirements of Rule 9(b) and are classic examples of improper formulaic recitations of elements that fail to state a claim.

"[Rule] 9(b) requires more specificity including an account of the 'time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.'" *Elkay International Limited v. Color Image Apparel, Inc.*, No. CV 14-08028 MMM (VBKx), 2015 WL 13917733 at *10 (C.D. Cal. June 3, 2015). Like their RICO claim, Plaintiffs simply lump all of the Defendants together in that they *all* purportedly made certain representations on unknown dates, at unknown times, to all of the Plaintiffs. *See* Complaint, ¶¶ 85 & 93. This is true even when considering the earlier allegations from Paragraphs 24-49 expressly referenced in the Fifth and Sixth Claims for Relief. *Ibid*. Adding to the confusion stemming from Plaintiffs' allegations is the fact that Plaintiffs bring both of these claims against Tommy only, yet allege in a conclusory fashion that ***all Defendants*** made misrepresentations. *See* Complaint, ¶¶ 84-99.

Moreover, as to both of these fraud claims, the conclusory nature of the purported misrepresentations renders them fatally flawed.[6] *See, e.g.*, Complaint, ¶ 31 ("Based on Defendants' representations, Melendez agreed to make a cash investment…"); ¶ 35 ("Tommy, personally and on behalf of the Entity Defendants, also promised Ranjeet and Bic that in exchange for a $500,000 investment, they would own 33% of the Stanton Cultivation facility"); ¶ 36 ("Based on Defendants' representations, Ranjeet and Bic agreed to make an investment of $7,800,000 …); ¶ 39 ("In reliance on the representations by

---

[6] Under Rule 9(b), "mere conclusory allegations of fraud are insufficient." *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS-FRCP 12(b)(6)

Tommy, including, but not limited to, the representations in the preceding paragraphs, Plaintiffs agreed to invest $9,124,885 in the cannabis stores"); ¶ 42 ("Plaintiffs invested in the businesses in reliance on the representations made to Plaintiffs"). Generic references to misrepresentations, without identifying *what* those purported misrepresentations were, does not suffice.

Finally, Plaintiffs' false promise claim additionally fails because Plaintiffs allege nothing more than Defendants' (or Tommy only—depending on how one reads Plaintiffs' claim) alleged failure to follow through with their promises. *See* Complaint, ¶ 97 ("Plaintiffs reasonably relied on Defendants' representations and believed Defendants would fulfill the promises as Defendants held themselves out to be experts in the development of cannabis stores"). Failure to perform, alone, does not suffice to state a claim for false promise claim in California. *See Marentes v. State Farm Mutual Auto Ins. Co.*, 224 F.Supp.3d 891, 920 (N.D. Cal. 2016) ("'something more than nonperformance is required to prove the defendant's intent to not perform his promise'"); *UMG Recordings, Inc. v. Global Eagle Entertainment, Inc.*, 117 F.Supp.3d 1092, 1108 (C.D. Cal. 2015) ("'[I]f plaintiff produces no further evidence of fraudulent intent than proof of nonperformance of an oral promise, he will never reach a jury'") [quoting *Magpali v. Farmers Group, Inc.*, 48 Cal.App.4th 471, 481 (1996)].

### 6.  Fraud (Concealment).

Like the two prior fraud counts, Plaintiffs' fraud claim based on concealment against all Defendants indiscriminately lumps the Defendants together insomuch as they all (or some of them only)[7] are alleged to have said (or not said) certain things, both "orally and in writing" on unspecified dates "[i]n or about January of 2021." Complaint, ¶ 101.

"Averments of fraud must be accompanied by 'the who, what, when, where, and how" of the misconduct charged. (Citation.) '[A] plaintiff must set forth *more* than the

---

[7] *See* Complaint, ¶ 101 ("Defendants, **including** Tommy, Julie, Christina, and Devon made numerous representations …") (emphasis added).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS- FRCP 12(b)(6)

neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false.'" *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) [emphasis in original].

Plaintiffs' vague and conclusory concealment allegations do not meet these heightened requirements. *See* Complaint, ¶ 102 ("Defendants concealed **the true facts** about the cannabis stores from Plaintiffs"). Plaintiffs do not allege facts to show each Defendants' duty to disclose any facts that were purportedly concealed. Further, Plaintiffs do not identify what they believe these "true facts" were. *Ibid*. ("Defendants concealed the identities of other investors"). Notably, nowhere within their Complaint do Plaintiffs allege, *e.g.*, that they invested with Defendants based on Defendants' representation that they would thereafter reveal the identities of their other investors, who those other investors purportedly are, or why it matters. Similarly, Plaintiffs vaguely allege that "Defendants concealed the true facts about the plans for the stores, including that some of the stores were not complete, and the true status of the necessary permits." Complaint, ¶ 103. However, Plaintiffs never alleged that Defendants made representations to them regarding the completion of certain stores, nor do they identify what the "true status" of the permits actually was/is. Lastly, Plaintiffs do not allege how each of them were damaged by the purported concealment of facts. *See* Complaint, ¶ 110.

Particularly considering that this latter fraud claim is raised against *all* Defendants, it is incumbent upon Plaintiffs to sufficiently apprise each defendant of the nature of the claim being asserted against him/her/it. These allegations fail to meet that standard.[8]

### 7. <u>Negligent Misrepresentation.</u>

"Under California law, a claim of negligent misrepresentation requires a showing of: '(1) a misrepresentation of a past of existing material fact, (2) made without reasonable

---

[8] *See Vess, supra,* 317 F.3d at 1106 ("[W]hen averments of fraud are made, the circumstances constituting the alleged fraud [must] 'be specific enough to give defendants notice of the particular misconduct … so that they can defend against the charge and not just deny that they have done anything wrong'").

ground for believing it to be true, (3) made with the intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damage.'" *Nazemi v. Specialized Loan Servicing, LLC*, 637 F.Supp.3d 856, 861 (C.D. Cal. 2022).

Plaintiffs' claim for Negligent Misrepresentation against Tommy fails for the same reasons as do the three iterations of Plaintiffs' fraud claims. *Neilson v. Union Bank of California, N.A.*, 290 F.Supp.2d 1101, 1141 (C.D. Cal. 2003) ("It is well-established in the Ninth Circuit that both claims for fraud and negligent misrepresentation must meet Rule 9(b)'s particularity requirements").

Like the fraud claims, Plaintiffs' negligent misrepresentation claim lumps all Defendants together thereby rendering the claim indecipherable as to who is alleged to have engaged in the purported conduct. And multiplying the confusion here is the fact that, despite Plaintiffs' averments regarding the purported conduct of *all* Defendants, this claim is levied against Tommy only. The conclusory brush with which Plaintiffs paint this claim renders it improper. *See, e.g.*, Complaint, ¶ 115 ("The factual representations made by Defendants were material and were false and misleading. Defendants made the representations without any reasonable grounds for believing them to be true").

### 8. **Conversion.**

"'Conversion is the wrongful exercise of dominion over the property of another. The elements of a conversion are the plaintiff's ownership or right to possession of the property at the time of conversion; the defendant's conversion by a wrongful act or disposition of property rights; and damages.'" *Dallas and Lashmi, Inc. v. 7-Eleven, Inc.*, 112 F.Supp.3d 1048, 1060 (C.D. Cal. 2015) (internal citations omitted). In California, "'[m]oney can be the subject of an action for conversion if a specific sum capable of identification is involved.'" *Ibid.* (quoting *Farmers Ins. Exch. v. Zerin*, 53 Cal.App.4th 445, 452 (1997)).

In their Complaint, Plaintiffs allege that "Defendants … knowingly and intentionally took **Plaintiffs' money** are [*sic*] used it for purposes other than the stores Plaintiffs invested in, including engaging in self-dealing transactions to enrich and benefit themselves."

Complaint, ¶ 122. This generic reference to all Defendants purportedly having converted "Plaintiffs' money" does not meet the pleading requirements under California law. Looking elsewhere in Plaintiffs' Complaint does not alleviate this defect as the previously-stated allegations do not offer any further specificity regarding the specific amount of money Defendants allegedly converted. *See, e.g.*, Complaint, ¶ 45 ("Rather than using the funds for their intended purposes, Defendants diverted **some of the investments** to apply for licenses for other locations in California and other states, or used **them** as deposits to reserve certain facilities while the licenses were pending") (Emphasis added).

Plaintiffs' claim for Conversion also fails because it is simply an improper recasting of Plaintiffs' Breach of Oral Contract claim. In California, a "claim for conversion cannot be maintained if it is 'predicated on a mere breach of contract.'" *Cusano v. Klein*, 280 F.Supp.2d 1035, 1043 (C.D. Cal. 2003). As noted by this Court in *Dallas and Lashmi, supra*, "'[an] obligation to pay money may not be enforced by a conversion action'". *Dallas and Lashmi*, 112 F.Supp.3d at 1060 (granting motion to dismiss because "it is clear that Plaintiffs' sought after remedy for Defendant's alleged conversion is compensation for the parties' oral contract").

Just like their Conversion claim (Complaint, ¶ 122), Plaintiffs' Breach of Oral Contract claim (Second Claim for Relief) alleges, *inter alia*, that "Defendants breached the oral agreement by … using the funds that Plaintiffs invested for other purposes …." Complaint, ¶ 69. Setting aside the other flaws in Plaintiffs' Conversion claim, if Plaintiffs successfully proved both their claims for Breach of Oral Contract and Conversion, the damages they would recover from the same would, at least in part, be duplicative. Thus, for this additional reason, Plaintiffs' Conversion claim, as currently pled, must fail.

### 9. <u>Accounting.</u>

In California, "[a] cause of action [for accounting] requires (1) a showing that a relationship exists between the plaintiff and defendant that requires an accounting; and (2) that some balance is due to the plaintiff that can only be ascertained by an accounting."

1    *Dahon North America, Inc. v. Hon*, No. 2:11-cv-05835-ODW (JCGx), 2012 WL 1413681
2    at *12 (C.D. Cal. April 24, 2012).

3         Here, Plaintiffs' claim fails for two reasons. First, they do not allege any relationship
4    between Plaintiffs and Defendants that requires an accounting. Rather, Plaintiffs simply
5    offer that "[a]s victims of Defendants' deliberate, calculated and malicious illegal acts …
6    Plaintiffs are entitled to have an accounting of [their] investment." Complaint, ¶ 127.This
7    does not suffice to state a special relationship for which courts will afford an accounting.
8    Second, Plaintiffs do not allege that they purportedly are owed some balance that can only
9    be ascertained through an accounting. Rather, they allege the exact opposite by stating the
10   **precise amount of money** to which they believe they are entitled, *i.e.*, "$9,124,885."
11   Complaint, ¶ 127. *See Hueso v. Select Portfolio Servicing, Inc.*, 527 F.Supp.3d 1210 (S.D.
12   Cal. 2021) ("'An action for accounting is not available where the plaintiff alleges the right
13   to recover a sum certain or a sum that can be made by calculation'") (quoting *Tesselle v.
14   McLoughlin*, 173 Cal.App.4th 156, 179 (2009)).

15        In short, per Plaintiffs' own allegations, an accounting in this action would be
16   entirely superfluous.

17        **10.**  **Unfair Business Practices (Cal. Bus. & Prof. Code § 17200, et seq.)**

18        "In order to sustain a cause of action under [Business and Professions Code] § 17200
19   … '[a] plaintiff alleging [unfair/fraudulent/unlawful] business practices under [the UCL]
20   must state with reasonable particularity the facts supporting the statutory elements of the
21   violation.'" *Casault v. Federal Nat. Mortg. Ass'n*, 915 F.Supp.2d 1113, 1128-29 (C.D. Cal.
22   2012) (quoting *Khoury v. Maly's of California, Inc*., 14 Cal.App.4th 612, 618 (1993)). "A
23   claim of unfair competition includes any unlawful, unfair, or fraudulent business practice
24   and unfair, deceptive, untrue, or misleading advertising as well as any act prohibited by the
25   false advertisement section of the Business and Professions Code." *Ibid*.

26        In perhaps the worst example of Plaintiffs haphazardly including conclusory
27   allegations in their Complaint, Plaintiffs' Eleventh Claim for Relief, which consists of only
28   two total paragraphs, is utterly devoid of *any* specificity, let alone the requisite level of

specificity contemplated in California with respect to pleading UCL violations. *See* Complaint, ¶ 130. Defendants' Motion ought to be granted.

### 11. <u>Imposition of Constructive Trust.</u>

Finally, this Court previously has determined that "[t]he weight of authority before the Court holds that constructive trust is not an independent cause of action, but instead only a remedy." *Oxford Street Properties, LLC v. Robbins*, No. CV 10-2999-VBF (RZx), 2010 WL 11549864 at *5 (C.D. Cal. Sept. 15 2010) (dismissing, without leave to amend, Plaintiff's cause of action for constructive trust).

For this reason alone, Plaintiffs cannot maintain their Twelfth Claim for Relief as an independent cause of action. As such, Defendants' Motion should be granted.

## V. <u>CONCLUSION</u>

Based on the foregoing argument and authority, Defendants respectfully request the Court grant their Motion and thereby enter an order abstaining from asserting jurisdiction over Plaintiffs' claims, or any of them. Alternatively, to the extent the Court opts to exercise its jurisdiction over Plaintiffs' claims, or any of them, Defendants' Motion ought to be granted, without leave to amend, as Plaintiffs' have failed to adequately allege the claims in their Complaint.

Dated: June 11, 2024                    BOREN, OSHER & LUFTMAN, LLP


By: /s/ Aaron M. Gladstein
    Stephen Z. Boren
    Steven F. Kuehl
    Aaron M. Gladstein
    Attorneys for Defendants
    CULTURE CANNABIS CLUB, SKYBOX
    HOLDINGS 81, MAMMOTH LEGEND
    CONSULTING, INC., BLOOMSTONE,
    PROFICIENT PROFITS, TOMMY LE,
    JULIE LE, CHRISTINA D'ANGELO,
    DEVON JULIAN, CHRIS FRANCY, and
    ANH TRAN

## PROOF OF SERVICE

STATE OF CALIFORNIA          )
                             )  ss
COUNTY OF LOS ANGELES        )

I am employed in the County of Los Angeles, State of California. I am over the age of 18 years of age and am not a party to this action. My business address is 222 N. Pacific Coast Highway, Suite 2222, El Segundo, CA 90245.

On June 11, 2024, I served the document(s) as described below on interested parties in this action as follows:

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT PURSUANT TO FED. R. CIV. PROC. 12(b)(6)**

| ☒ | electronically by using the Court's ECF/CM System. | |
|---|---|---|
| | John C. Kang, Esq.<br>Courtney Wenrick, Esq.<br>WOMBLE BOND DICKINSON (US) LP<br>400 Spectrum Drive, Suite 1700<br>Irvine, CA 92618<br>John.kang@wbd-us.com<br>Courtney.wenrick@wbd-us.com | *Attorneys for Plaintiffs Benjamin Melendez, Ranjeet Pannu, and Bikramjit Singh Pannu* |

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on June 11, 2024, at El Segundo, California.

_____
/s/ Alejandra Aquino
Alejandra Aquino